### A96A1582. MAO v. THE STATE.
(474 SE2d 679)

JOHNSON, Judge.

Saon Mao was convicted of aggravated assault and possession of a firearm during the commission of a felony. She appeals the denial of her motion to suppress her custodial statement. We affirm.

Although Mao was read her *Miranda* rights twice before giving the statement, she contends that a combination of linguistic, cultural, and emotional factors prevented her from making a knowing and intelligent waiver of those rights.

Mao was born in Cambodia in 1958. She fled from there to a refugee camp in Thailand, where she spent several years before emigrating to the United States approximately seven years before her trial. She spoke little English when she arrived, but took English classes and learned the language through everyday interactions with other people. Mao earned her GED and completed some nursing school before the incident that gave rise to this case.

In that incident, Mao shot her estranged boyfriend when he returned some gifts she had given him during the relationship. A police officer called to the scene of the shooting placed Mao in the back seat of his patrol car and read her *Miranda* rights to her. She said she understood her rights and was willing to talk to him, but he did not continue the conversation.

A detective arrived a short time later and again read Mao her *Miranda* rights, and again she said she understood and was willing to talk. He advised Mao that she was being charged with aggravated assault. She asked what the charge meant, and he explained that it meant she was accused of shooting the victim. The detective then tape-recorded her statement while they sat in the back seat of the patrol car. The statement was about four or five minutes in length, and was recorded approximately 25 to 40 minutes after the patrol officer first received the call about the shooting.

While in custody before trial, Mao was interviewed by Dr. Robert Storms and Dr. Theresa Sapp, forensic psychologists with the Georgia Mental Health Institute. Both later testified at the *Jackson-Denno* hearing that they believed Mao had not actually understood her *Miranda* rights, even though she had given the patrol officer and the detective the impression that she understood them. Storms and Sapp based this opinion on several underlying factors:

They concluded that the cultures in which Mao had lived most of her life did not have a tradition of citizens' rights to due process and

against self-incrimination; and that Mao, while living under oppression in Cambodia and Thailand, had developed the "survival mechanism" of always indicating understanding and assent to people in authority. Storms and Sapp also found that though Mao's comprehension of abstract concepts was very poor, Mao had continued her habit of expressing understanding and assent in order to minimize Americans' frustration in trying to communicate with her. Another factor was that Mao had given her statement at a time of great emotional stress, which Storms and Sapp said would further reduce her ability to comprehend a language other than her native tongue. Their ultimate conclusion was that Mao's waiver of her *Miranda* rights had not been knowing and intelligent.

When an appellate court reviews an order on a motion to suppress evidence, it must construe the evidence most favorably to upholding that order; the trial court should resolve conflicts in the evidence, and its credibility and factual findings should not be disturbed on appeal unless they are clearly erroneous. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). When determining whether a waiver of *Miranda* rights and a subsequent statement were voluntarily and knowingly made, a court should consider the totality of the circumstances in light of the nine factors set out in *Reinhardt v. State*, 263 Ga. 113, 115 (3) (b) (428 SE2d 333) (1993): (1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge and the nature of her right to consult an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with friends, relatives, or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods of interrogation used; (7) length of interrogation; (8) whether the accused had previously agreed to give statements; and (9) whether the accused has later repudiated an extrajudicial statement.

In the case before us, the trial court based its decision on evidence that conflicted with the opinions of Drs. Storms and Sapp: Mao's ability to understand and respond appropriately to questions asked of her at the *Jackson-Denno* hearing; her appropriate responses to the detective's questions in the statement sought to be suppressed; the fact that she was *Mirandized* not once, but twice; and a statement in an earlier report by Dr. Storms that Mao's language skills were excellent, and not a barrier to communication. Moreover, both the patrol officer and the detective testified that Mao responded appropriately in their conversations with her, and seemed to have no problems understanding English. In these circumstances, the trial court's decision that Mao waived her rights knowingly and intelligently was not clearly erroneous.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

Decided August 13, 1996.

*Colette B. Resnik*, for appellant.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.