A98A1185. THE STATE v. STANSBURY.
(505 SE2d 564)

ANDREWS, Chief Judge.

The State appeals from the trial court's order granting Sean Stansbury's motion to suppress the results of an alco-sensor test and subsequent field sobriety tests. The trial court found that the officers did not have a reasonable, articulable suspicion to detain Stansbury and administer the alco-sensor test. We disagree and reverse.

The facts in this case are undisputed. Two Cobb County police officers on routine patrol were driving behind Stansbury's car when they noticed his license tag was expired. The officers pulled Stansbury over, and one officer went up to the man sitting on the passen-

---

ger side and the other officer went to talk to Stansbury, who was in the driver's seat. Both officers noticed a strong odor of alcohol coming from the car and could see that the passenger was intoxicated.

One of the officers asked Stansbury if he had been drinking, and Stansbury said he had not. He said the other man in the car was a friend of his and he had picked him up to take him home because he had too much to drink. The passenger in the car confirmed that he had been drinking and that was why Stansbury was driving.

The officers decided to give Stansbury an "alco-sensor" test so they could make sure it was safe for Stansbury to drive. When Stansbury's alco-sensor test registered positive for alcohol, the officers administered several field sobriety tests. After giving Stansbury the field sobriety tests, the officers took him to the hospital where he was given a blood test. The results of the blood test showed a blood alcohol level of 0.17 grams.

A videotape of the stop was played at the hearing. Officer Blakeney, the officer who went up to the driver's side of the car and spoke to Stansbury stated: "There's a strong odor of alcohol coming from the passenger side. [2nd OFFICER]: Well, I could tell, he's toasted. OFFICER BLAKENEY: Yeah, he [Stansbury] said that he works for Marietta Country Club, or Marietta City Club and he picked the other guy up. I'm going to go ahead and ask him if he'll do a field Alko for me. [2nd OFFICER]: Yeah. That way we'll know for sure that the odor of alcohol is only coming from the passenger."

After the hearing, the trial court found that the only reason the officers had Stansbury blow into the alco-sensor was to make sure he was safe to drive home. Accordingly, the court found the alco-sensor test was administered without reasonable, articulable suspicion. This appeal followed.

"An officer must have a reasonable and articulable suspicion that a person is involved in criminal activity to justify seizing that person for a brief period of time without probable cause to make an arrest." *State v. Bishop*, 188 Ga. App. 881, 882 (374 SE2d 808) (1988). See also *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). The state contends that the strong odor of alcohol coming from the car and the officers' inability to determine if only one or both of the occupants were intoxicated gave rise to a reasonable and articulable suspicion upon which to detain Stansbury and administer the alco-sensor test to him in order to determine if it was safe for him to drive. We agree.

It is clear that the original stop and detention for an expired license tag were valid. The question then becomes whether the officers, after handling the license tag violation, were authorized to request that Stansbury get out of the car and perform the alco-sensor test. "It is well established that the police may 'seize' an individual

for a brief period of time without probable cause to make an arrest, provided there exists a reasonable and articulable suspicion that the person is involved in criminal activity." *State v. Golden*, 171 Ga. App. 27, 30 (3) (318 SE2d 693) (1984). See also *Terry v. Ohio*, supra. "The purpose of such a detention is to maintain the status quo while investigating the circumstances which give rise to the suspicion of criminal wrongdoing. The validity of an officer's investigative or protective conduct upon making a 'Terry stop' is determined in each case by balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which is sought to be advanced." (Citations omitted.) *Golden*, supra at 30. "Momentary detention and questioning are permissible if based upon specific and articulable facts which, taken together with rational inferences from those facts, justify a reasonable course of inquiry not based on mere inclination, caprice, or harassment." (Citations, punctuation and emphasis omitted.) *State v. Roberson*, 165 Ga. App. 727, 729 (302 SE2d 591) (1983).

Here, there is no question that the officers were acting on mere inclination or caprice or for the purpose of harassment. Given the strong odor of alcohol coming from the car and the occupants' admission that they had just come from a place where the passenger admittedly had drunk too much, the officers were justified in their concern for the safety of Stansbury and his passenger and other drivers. Therefore, we cannot say that the additional time required to perform a simple alco-sensor test was not justified under the circumstances. This is especially true since Stansbury had already been detained due to the expired tag, and the additional intrusion occasioned by asking him to get out and blow into the alco-sensor must be considered minimal. *Golden*, supra at 31.

*State v. Burke*, 230 Ga. App. 392, 393 (496 SE2d 755) (1998), relied on by Stansbury is not to the contrary. In *Burke*, this Court upheld the trial court's grant of defendant's motion to suppress because there were no outward indicia of intoxication and the defendant was placed under arrest only because he had an accident on his motorcycle and admitted to having "two or three beers." The facts set out above show that is not the situation in this case.

Accordingly, we find there was a reasonable, articulable suspicion for the officers to ask Stansbury to perform the alco-sensor test. The court erred in granting the motion to suppress the results of the test.

*Judgment reversed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 25, 1998 —
RECONSIDERATION DENIED SEPTEMBER 9, 1998 —

*Barry E. Morgan, Solicitor, Alice B. Kamerschen, Assistant Solicitor*, for appellant.
*William H. Toler III*, for appellee.