A99A1583. HARRIS v. THE STATE.
(521 SE2d 462)

BLACKBURN, Presiding Judge.

Richard David Harris was convicted after a bench trial of trafficking in cocaine. He appeals from the denial of his motion for new trial arguing that the trial court erred in denying his motion to suppress the cocaine evidence seized from him during a traffic stop. We affirm.

In our review of the trial court's order denying Harris' motion to

suppress, we construe the evidence most favorably to uphold the court's ruling. *Mao v. State*, 222 Ga. App. 482, 483 (474 SE2d 679) (1996). It is the trial court's duty to resolve conflicts in the evidence, and its findings of credibility and fact will not be disturbed on appeal unless they are clearly erroneous. Id. Viewed in this light, the record reveals the following:

In late December 1997, DeKalb County Detective C. R. Lynn received information from a confidential informant (CI) that a black male known as "Rico" was involved in the illegal drug trade. Based on the CI's assistance in other cases, Detective Lynn believed the CI to be truthful and reliable. The CI told Detective Lynn that Rico let him ride in his car while he made deliveries of suspected cocaine. The CI said that Rico often traveled with eight to nine ounces of cocaine on his person and that he kept a gun — either a Mach 11 or a Glock 40 — in the car. The CI said that Rico recently bought a house, that he shopped at expensive clothing stores, that he owned a chicken wing stand called "City Wings" which was never open, and that he routinely left the house between 7:00 a.m. and 8:00 a.m. to sell drugs and that he would return home at about noon. The CI showed Detective Lynn where Rico lived and pointed out his car, a gold Lexus. Detective Lynn determined the car was registered to Richard David Harris. Detective Lynn obtained a picture of Harris and showed it to the CI who confirmed that Harris and Rico were the same person. After confirming many of the details of the CI's information, Detective Lynn and other DeKalb County detectives and police officers began surveillance of Harris.

At 8:10 a.m. on March 5, 1998, Detective Pinson was watching Harris' home. He reported that Harris got in his gold Lexus and drove away. Detective Lynn and two other detectives, Ford and Brooks, picked up the surveillance as Harris neared Interstate 20. Detective Brooks followed Harris to a gas station in Rockdale County. She reported that Harris left the gas station, then did a U-turn and returned to it, whereupon he parked his car and got into a black Honda and left the station. Within 30 minutes, Harris returned to the gas station, got back in his car, and drove away quickly. Believing that a drug transaction had just occurred, Detective Lynn told a uniformed officer, Craddock, to stop Harris' car.

Officer Craddock testified that before he was directed to stop Harris' car, Detective Lynn informed him that Harris was likely armed and might have illegal drugs in the car. As Officer Craddock approached Harris, Harris slowed his car. Officer Craddock passed Harris' car and observed that Harris was not wearing his seat belt. Officer Craddock directed Harris to pull over, and Harris complied. After giving Harris a warning citation for violating the seat belt law, Officer Craddock asked for permission to search the car. Harris con-

sented and stepped out of the car. Because Craddock believed Harris might be armed, he patted him down for weapons. During the course of the pat-down, Officer Craddock felt a softball-sized bulge in Harris' left sock. Officer Craddock testified the bulge felt like "a bunch of little rocks" wrapped in plastic and that he "suspected it right off to be drugs." Craddock lifted Harris' pant leg and removed the suspected cocaine. At the bench trial, Harris stipulated that the approximately two hundred grams of chunky substance found on him was cocaine of at least ten percent purity.

1. In his first enumeration of error, Harris contends Officer Craddock exceeded the scope of a protective weapons search authorized by *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968). Harris does not challenge the propriety of a weapons search; rather, he argues that once Officer Craddock felt the powdery substance and realized it was not a weapon, his pat-down search should have ended.

Under what has been deemed the "plain feel" doctrine,

> if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Minnesota v. Dickerson*, 508 U. S. 366, 375-376 (113 SC 2130, 124 LE2d 334) (1993); *Tukes v. State*, 236 Ga. App. 77, 79 (2) (a) (511 SE2d 534) (1999). Contraband identified through an officer's sense of touch during the course of a lawful *Terry* pat-down may be seized. *Tukes v. State*, supra; *Howard v. State*, 220 Ga. App. 579, 581-582 (469 SE2d 746) (1996).

In this case, Officer Craddock testified that, based upon his experience and the information he had been given, he knew immediately upon touching the substance that it was contraband. Under the "plain feel" doctrine, Officer Craddock was authorized to seize the substance. *Tukes v. State*, supra. "He was not compelled to ignore what was apparent to him upon feeling the object and to walk away instead. [Cits.]" *Andrews v. State*, 221 Ga. App. 492, 493 (471 SE2d 567) (1996).

2. In his second enumeration of error, Harris argues that Officer Craddock lacked reasonable articulable suspicion to stop him, and, alternatively, if Officer Craddock was authorized to make a traffic stop for a seat belt violation, he had no basis to detain Harris after issuing the warning. We disagree.

(a) Pretermitting whether the information provided by the CI and through the detectives' observations of Harris' morning activities was sufficient to authorize an investigative stop, Officer Craddock was authorized to stop Harris for committing a traffic offense, a seat belt violation, in his presence. "This rises . . . to the level of probable cause to arrest." *Richardson v. State*, 232 Ga. App. 398, 400 (1) (501 SE2d 885) (1998). Although Officer Craddock acknowledged that he probably would not have stopped Harris but for Detective Lynn's orders, which provides the basis for a pretext argument, "an officer's ulterior motive is of no consequence under the holding in *Whren v. United States*, 517 U. S. 806 (116 SC 1769, 135 LE2d 89) [(1996)]." *Cotton v. State*, 237 Ga. App. 18 (513 SE2d 763) (1999).

(b) Contrary to Harris' assertion, Officer Craddock did not detain Harris and search his car based upon the seat belt violation; rather, Harris consented to the search. Having effected a valid traffic stop, the officers were authorized to request consent to search the automobile. *Gamble v. State*, 223 Ga. App. 653, 656 (3) (478 SE2d 455) (1996). The stop did not exceed the bounds of a brief investigative detention, so Harris' consent to search was not the product of an illegal detention. The evidence supports the court's finding that his consent was freely and voluntarily given. See *Taylor v. State*, 230 Ga. App. 749 (498 SE2d 113) (1998).

3. In his third enumeration of error, Harris complains that Officer Craddock's pat-down of his person was not consensual. However, as we have held:

Once a defendant has been stopped for violating a traffic law, a police officer is entitled to execute a pat-down search for weapons. *Buffington v. State*, 229 Ga. App. 450, 451 (494 SE2d 272) (1997). This pat-down search based on *Terry v. Ohio*, [supra,] does not require consent. Id.

*Ginn v. State*, 236 Ga. App. 448 (512 SE2d 338) (1999).

Given the facts of this case, the trial court's denial of Harris' motion to suppress was not clearly erroneous.

*Judgment affirmed. Barnes and Ellington, JJ., concur.*

DECIDED AUGUST 6, 1999.

*Jennifer A. Jones*, for appellant.
*J. Tom Morgan*, District Attorney, *Robert M. Coker, Maria*

*Murcier-Ashley, Aileen R. Page, Assistant District Attorneys*, for appellee.