## A01A1958. HOWARD v. THE STATE.
### (558 SE2d 745)

ELDRIDGE, Judge.

A Muscogee County jury found Leroy Howard guilty of multiple counts of violation of the Georgia Controlled Substances Act and possession of a firearm with an altered identification mark. On appeal, he challenges the trial court's denial of his motion to suppress, claiming that an investigating officer exceeded the scope of a *Terry*[1] pat-down when he pulled open Howard's pocket in order to discover what was in it. Under the facts of this case, we agree and reverse.

An informant told members of the Metro Narcotics Task Force that she could purchase a quantity of marijuana from Howard. At the request of law enforcement, the informant telephoned Howard late in the evening to arrange for a purchase. The call was recorded. Howard told the informant that he did not have any "weed" at his house because he "done carried it on up to the country. Just got back and

---

got in the bed." Howard told the informant that he would have the marijuana to sell in the morning: "get up early now and I'll call you by mid-morning." This information confirmed what the agents already knew to be Howard's pattern of behavior. After a 1997 drug arrest following the execution of a search warrant at his trailer in the "country," i.e., Harris County, Howard told the arresting officers that he sold drugs in Columbus, but brought them out to Harris County every evening. In addition, during an impound search of Howard's vehicle pursuant to a 1998 incident, marijuana was found hidden in his car.[2]

Two days after recording the telephone call confirming that Howard was still selling in Columbus and removing the drugs to Harris County every night, the task force put Howard's house under surveillance. The officers watched Howard leave his residence in the early evening. They followed his vehicle. Before the officers could stop Howard, however, he pulled over and got out of his car, locking it before he left. The officers pulled in behind him and exited their vehicle. Howard recognized several of the officers from prior arrests and walked toward them. One of the officers, Jeff Evans, had been involved in two prior incidents wherein Howard had threatened people with firearms. Officer Evans testified that as Howard approached, "I greeted him. I did conduct a pat-down search of him. I informed him that's what I was doing."

During the pat-down, Evans felt an object in Howard's front left pocket. The sum total of Evans' knowledge about the object in Howard's pocket was:

> A large hard object that I would; that I was really unsure of what it was at that time. . . . They were hard, a very hard and round object. . . . It felt like a tubular type, round object. Probably what, three and a half inches long, three inches long. . . . About the same dimension wide.

Based on this information, Evans "separated the pocket outside from the inside. . . . I looked; I pulled the pocket out and looked down into the pocket." Inside were two plastic prescription pill bottles with the name "Earl Boone" on them. One of the bottles contained two different types of pills. Howard was arrested. A search of his car revealed a .25 semi-automatic weapon in the glove box and a quantity of different narcotics under the hood in a cooler-type container. Following his arrest, Howard consented to a search of his house, because he wanted

---

[2] Howard served some time in prison for possession of marijuana with intent to distribute as a result of this prior arrest. The record is unclear how long Howard had been out of jail before the latest incident.

"to help himself with this case." A small amount of marijuana and powdered cocaine were found at Howard's residence, along with a .357 automatic weapon with the serial number filed off.

Howard filed a motion to suppress the narcotics. On cross-examination during the motion hearing, Officer Evans testified as follows:

> Q: When you patted him down and you felt those pills, you knew that wasn't a weapon or you could tell that wasn't a weapon, couldn't you?
> A: Not specifically, no, sir.
> Q: So it's your testimony you thought that pill bottle might be a weapon.
> A: When you first feel a large object of that size, you can't tell exactly what it is just through a pair of blue jeans.
> Q: So what sized pill bottle was it?
> A: They were with two together. It was; well, I can say probably three inches wide and with them together, it's several inches.

*Held*:

A *Terry* pat-down, unlike a full search, is conducted for the purpose of insuring the safety of the officer and of others nearby, not to obtain evidence for use at trial. It is a minimal intrusion reasonably designed to discover guns, knives, clubs, or other weapons that could prove dangerous to a police officer. Under *Terry*, an officer is authorized to pat down a suspect's outer clothing.[3] He may intrude beneath the surface in only two instances: (1) if he comes upon something that feels like a weapon,[4] or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent, i.e., the "plain feel" doctrine.[5]

As to the second instance above, Officer Evans never testified that he recognized the objects in Howard's pocket as contraband; that Howard was known to sell narcotics from prescription pill bottles; and that he recognized such objects in Howard's pocket. Evans did not recognize contraband until after he intruded beneath the surface of Howard's clothing by opening his pocket, at which time the prescription pill bottles came into view. Accordingly, seizure of the bottles under the "plain feel" doctrine was not authorized.

As for the first instance above, Evans testified only that he could not rule out "specifically" that the object in Howard's pocket might be

---

[3] *Corley v. State*, 236 Ga. App. 302, 304 (1) (a) (512 SE2d 41) (1999).
[4] *State v. Newton*, 227 Ga. App. 394, 395 (489 SE2d 147) (1997).
[5] *Tukes v. State*, 236 Ga. App. 77, 79 (511 SE2d 534) (1999).

a weapon and that "it is hard to tell" through blue jeans. However, if such indecision were sufficient to justify the intrusion at issue here, the protections of the Fourth Amendment would be eviscerated for purposes of a *Terry* pat-down, since all an officer would have to state is that he did not know if the object at issue was a weapon. This is not to say that an officer must be absolutely positive that an object is a weapon in order to protect himself by looking to make sure. Officer safety is paramount. But, to satisfy the Fourth Amendment when dealing with what may be an unusual weapon, "an officer must provide specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down."[6] Only then can judges satisfy the Fourth Amendment's requirement "of a neutral evaluation of the reasonableness of a particular search by comparing the facts with the officer's view of those facts."[7] In this case, Officer Evans provided no facts whatsoever which would lead a police officer to suspect that the three-inch tubular pill bottles in Howard's pocket were some type of "atypical weapon" so as to justify intruding into Howard's pocket for the officer's protection. Absent any such facts on the record, the trial court erred as a matter of law in finding that exceeding the bounds of a *Terry* pat-down was justified in this case.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*

DECIDED JANUARY 7, 2002.

*John R. Mobley II*, for appellant.

*J. Gray Conger, District Attorney, Roger H. Anderson, Assistant District Attorney*, for appellee.

---

[6] *State v. Newton,* supra at 395-396 (1); *Brown v. State,* 181 Ga. App. 768, 770 (1) (353 SE2d 572) (1987).

[7] (Punctuation omitted.) *Holtzendorf v. State,* 125 Ga. App. 747, 753 (188 SE2d 879) (1972); *Taylor v. State,* 239 Ga. App. 858, 859 (1) (a) (522 SE2d 266) (1999).