S03A0083. MOHAMED v. THE STATE.
(583 SE2d 9)

HINES, Justice.

Abdirisak D. Mohamed appeals his conviction for financial transaction card theft, asserting that OCGA § 16-9-31 (d) is unconstitutional. For the reasons that follow, we reverse his conviction.

Construed to support the verdict, the evidence showed that Treisha Johnson's car was stolen while she stepped away from it to

make a bank deposit. Her purse was in the car and contained two credit cards for gasoline companies.

Approximately a week later, a customer entered a restaurant and stated that some men were outside gathered around a car, and that there was a pistol in it; the car matched the description of Johnson's. The police were called, arrived, and attempted to speak with those in the car, but it was driven away when its occupants saw the police; police attempts to follow were unsuccessful. The police instructed the restaurant employees to call them if the men returned.

A few days later, Mohamed and another man came into the restaurant. An employee recognized Mohamed as having been in the car during the previous incident, and called the police. Officer Parker arrived and asked Mohamed to step outside to discuss something with him. Mohamed inquired about what was to be discussed, and Parker said it concerned a crime. Mohamed stepped outside and placed his hands in the front pockets of his pants. Parker told him to remove his hands from his pockets and asked if he had any guns, knives, or potential weapons. Mohamed said he did not. However, upon patting the outside of Mohamed's pants' pockets, Parker detected what felt like a screwdriver. Parker asked Mohamed what the object was and Mohamed replied that he did not know. Parker removed the screwdriver and asked Mohamed why he had it and if there were any other potential weapons on his person; Mohamed did not reply. Parker continued patting Mohamed's pockets and felt what he thought was a pocketknife. He asked what this object was and Mohamed again said he did not know. Parker removed the pocketknife and asked Mohamed why he had not told him about it; Mohamed again did not reply. Parker asked whether there was anything else on his person that Parker should know about; Mohamed said "no." Parker continued patting Mohamed's pockets and felt what he believed to be firm plastic cards. Parker asked what the objects were, and Mohamed once again said he did not know. Parker had previous experience with persons placing razor blades on the edges of such cards and using them as weapons. Parker removed the cards from Mohamed's pants; they later proved to be Johnson's Exxon and Chevron credit cards. Parker asked Mohamed to whom the cards belonged. Mohamed responded that they belonged to his friend Dray, but he could not supply an additional name for Dray, nor Dray's address or phone number. Mohamed was arrested for financial transaction card theft. He told the police the location of Johnson's car, and that he found the credit cards on the ground near it.

Johnson testified that she did know Mohamed, and that she had not given him or anyone else permission to use the credit cards.

1. Mohamed contends that the language of OCGA § 16-9-31 (d),

which was charged to the jury, constitutes an impermissible shifting of the burden of proof from the State to the defendant. We agree.

OCGA § 16-9-31 (d) reads:

> When a person has in his possession or under his control two or more financial transaction cards issued in the names of persons other than members of his immediate family or without the consent of the cardholder, such possession shall be prima-facie evidence that the financial transaction cards have been obtained in violation of subsection (a) of this Code section.[1]

Thus, under OCGA § 16-9-31 (d), the State need prove nothing more than the defendant's possession of two financial transaction cards as described therein to procure a conviction under OCGA § 16-9-31 (a). OCGA § 16-9-31 (d) thus is a mandatory presumption of guilt based upon certain facts. But the crime of financial transaction card theft set forth in OCGA § 16-9-31 (a) contains elements other than the mere possession of two such financial transaction cards.[2]

Mandatory presumptions that shift the burden of proof to the defendant are impermissible in criminal cases. *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979); *Isaacs v. State*, 259 Ga. 717, 734-735 (35) (b) (386 SE2d 316) (1989).

Instructing the jury with the unconstitutional language of OCGA § 16-9-31 (d) in this case cannot be considered harmless error. See *Williams v. Kemp*, 255 Ga. 380, 383 (338 SE2d 669) (1986). "[A]n

---

[1] OCGA § 16-9-31 (a) states:

A person commits the offense of financial transaction card theft when:

(1) He takes, obtains, or withholds a financial transaction card from the person, possession, custody, or control of another without the cardholder's consent; or who, with knowledge that it has been so taken, obtained, or withheld, receives the financial transaction card with intent to use it or to sell it or to transfer it to a person other than the issuer or the cardholder;

(2) He receives a financial transaction card that he knows to have been lost, mislaid, or delivered under a mistake as to the identity or address of the cardholder and he retains possession with intent to use it or sell it or to transfer it to a person other than the issuer or the cardholder;

(3) He, not being the issuer, sells a financial transaction card or buys a financial transaction card from a person other than the issuer; or

(4) He, not being the issuer, during any 12 month period receives two or more financial transaction cards in the names of persons which he has reason to know were taken or retained under circumstances which constitute a violation of paragraph (3) of subsection (a) of Code Section 16-9-33 and paragraph (3) of this subsection.

[2] Mohamed was charged by accusation with two counts of financial transaction card theft, without reference to the specific Code section, to wit: that he "unlawfully did knowingly withhold from the person, possession, custody and control of Treisha R. Johnson, [the cards] without [Johnson's] consent. . . ."

impermissible *Sandstrom* instruction is harmless so long as the instruction was applied to an element of the crime that was not at issue in the trial, and if the evidence of guilt is overwhelming." *Bridges v. State*, 268 Ga. 700, 706 (2) (f) (492 SE2d 877) (1997). Mohamed's defense was that he found the cards on the ground, that he was not knowingly withholding them from Johnson, and that any connection he had with the stolen car was coerced.[3] Although the evidence authorized the jury to reject this defense, it cannot be said that the evidence of Mohamed's guilt was overwhelming. The opinion in *Wilson v. State*, 212 Ga. App. 325, 326 (2) (441 SE2d 808) (1994), holding that giving the jury an unconstitutional, burden-shifting instruction can be harmless when other instructions properly identify the State's burden of proof, is hereby overruled.

However, the entire statute concerning financial transaction card theft is not unconstitutional. "Where one portion of a statute is unconstitutional, this court has the power to sever that portion of the statute and preserve the remainder if the remaining portion of the Act accomplishes the purpose the legislature intended. [Cits.]" *Nixon v. State*, 256 Ga. 261, 264 (3) (347 SE2d 592) (1986). Severing OCGA § 16-9-31 (d) from the remainder of the Code section does not affect the purpose of the statute and the remainder of OCGA § 16-9-31 is to be given full effect. Further, the evidence against Mohamed, even without the invalid presumption, is sufficient to enable a rational trier of fact to find him guilty of the crimes of which he was convicted, and he may be retried. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Dinning v. State*, 267 Ga. 879 (485 SE2d 464) (1997). We address Mohamed's remaining enumerations of error that are likely to recur on retrial.

2. Mohamed asserts that the financial transaction cards should be suppressed and prohibited from introduction into evidence because they are the fruits of an illegal search. This is not so.

> The United States Supreme Court has carved out a narrowly drawn exception that authorizes police officers to make for their own protection a reasonable search for weapons when they have reason to believe that an individual is armed and could be dangerous to themselves or others, regardless of whether they have probable cause to arrest the individual for a crime. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868,

---

[3] Mohamed presented testimony from witness Hill that on the day that the stolen car was first seen at the restaurant, Mohamed came to Hill's door, imploring that he be let in, stating that someone was after him. Hill saw a vehicle matching the description of Johnson's car "screaming down the street in reverse," let Mohamed inside his house, and called the police.

20 LE2d 889) (1968).

*Edwards v. State*, 264 Ga. 615, 616 (2) (449 SE2d 516) (1994).

Here Officer Parker was investigating a man who was seen in a stolen car, had previously fled police, and knew that Parker was investigating a crime. Immediately after exiting the restaurant, the man put his hands into his pockets. Under these circumstances, Parker was justified in conducting a pat-down search for his safety. "[I]t is 'unreasonable to require that police officers take unnecessary risks in the performance of their duties,' [cit.]," id., and balancing this principle against Fourth Amendment concerns, the trial court correctly found that the exterior pat-down search of Mohamed's pockets was constitutionally permissible.

Nor was there error in the trial court's finding that the intrusion into Mohamed's pocket was lawful. In addition to the above facts, at the time Parker reached into Mohamed's pocket to remove the cards, he knew that Mohamed had lied about two items in his pockets that could be used as weapons, and that the sort of objects he felt in the pocket were ones that, in his experience, had been known to have been fashioned into weapons. See *McGugan v. State*, 215 Ga. App. 535, 537 (451 SE2d 460) (1994).

3. Mohamed contends that the trial court improperly curtailed his trial cross-examination of Officer Parker. However, that is not the case. Mohamed sought to ask Parker questions concerning Parker's testimony at the motion to suppress hearing, and particularly whether that testimony satisfied the legal requirements for admissibility of the fruits of a search pursuant to *Terry v. Ohio*, supra. The court did not forbid all questioning about Parker's earlier testimony, but did properly curtail Mohamed's questioning Parker about what was and was not a legal search; as the court noted, that legal determination is the province of the court, had previously been addressed by the court, and was not an issue for the jury. See *Pickens v. State*, 225 Ga. App. 792, 797 (2) (484 SE2d 734) (1997). The trial court did not prevent Mohamed from asking Parker if he was lying about the circumstances which surrounded the search; that is simply a question Mohamed did not ask.[4]

4. Mohamed requested that the trial court give the jury three separate instructions derived from *Thomas v. State*, 176 Ga. App. 771, 774 (3) (a), (b) (337 SE2d 344) (1985), all to the effect that the State must prove beyond a reasonable doubt that Mohamed deliberately withheld the cards from Johnson. But the failure to give an instruction in the exact language requested by Mohamed was not

---

[4] Mohamed did ask whether the testimony Parker gave before the jury was the same as he had given in the earlier hearing, and Parker testified that it was.

harmful error; the principle asserted was adequately covered elsewhere in the jury charge as a whole. *Parker v. State*, 270 Ga. 256, 258 (3) (507 SE2d 744) (1998). The jury was instructed that the State must prove the elements of the crimes charged in the accusation beyond a reasonable doubt, and the accusation charged that Mohamed unlawfully and knowingly withheld the cards from Johnson.

5. Prior to the jury's deliberation, the trial court instructed it on the consequences of a failure to achieve unanimity. Such a charge was disapproved in *Harris v. State*, 263 Ga. 526, 528 (6) (435 SE2d 669) (1993), and should not have been given.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 30, 2003.

*Gerard B. Kleinrock*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.