## A04A0559. HOLMES v. THE STATE.
(601 SE2d 134)

ADAMS, Judge.

Joshua Daniel Holmes was charged with possession of methamphetamine with intent to distribute. He filed a motion to suppress the evidence of contraband, which was denied. Holmes stipulated to the evidence and charges against him, and was convicted by the trial court after waiving his right to a jury trial. He appeals, challenging the denial of his motion to suppress.

Stoney Joe Mathis, a narcotics officer with the Henry County Police Department, testified at the motion to suppress hearing as follows: On June 18, 2002, he and two other officers went to the residence of Brian Pack after a complaint was received of heavy pedestrian traffic coming in and out of his house and that Pack was possibly involved in the sale of methamphetamines. A computer search revealed Pack was on probation and that a search clause, giving officers the right to search his residence, had been imposed as a condition of his probation. Mathis testified that when he arrived at the residence, he observed a man, subsequently identified as Holmes, lock the front door of the house and start walking toward a vehicle in the driveway, which was approximately 25 yards away. Mathis identified himself to Holmes, and questioned him about whether he lived at the residence and whether he was involved in the sale of methamphetamines. Holmes denied that he was selling drugs, and told the officer he lived there but did not own the residence. Mathis asked Holmes for identification, and Holmes told Mathis it was inside the house. As Holmes and Mathis were walking toward the house, Mathis noticed that Holmes had his wallet in his back pocket, and he asked Holmes if his identification was in the wallet. Holmes indicated

---

his wallet did contain his identification, but by that point Holmes and Mathis had arrived at the front door, and Holmes unlocked the door and invited Mathis in while he went to deactivate the alarm system. Holmes, Mathis, and the other two officers then went inside the residence.

Holmes turned off the alarm, and he and the officers went into the living room. Holmes told the officers that he did not want the residence searched until the owner returned. Mathis testified that Holmes was moving around a lot, walking around the coffee table, and getting up and down off the sofa. Mathis testified that Holmes' behavior plus his experience that weapons are often found where there are narcotics made him nervous, so he decided to pat Holmes down for weapons.

Holmes initially responded to the statement that Mathis was going to pat him down by sticking his hands in his pockets, but he took his hands out of his pockets and held them up when Mathis told him to do so. Mathis first felt something in Holmes left pocket, and when he asked Holmes what it was, Holmes took out approximately $4,000 and threw it on the table. Mathis testified that he noticed a little piece of plastic sticking out of Holmes' other pocket, and he asked Holmes if he had anything else in his pocket. Holmes responded no, but the officer testified he could see a "little bulge" in the pocket and a piece of plastic sticking out. Mathis reached over and touched the bulge in the pocket and asked Holmes what was in the pocket. Mathis testified that at that point he "pretty much knew what it was before I even put my hand on it just by the shape of it and the plastic bag" and that when he touched it he "knew exactly what it was." The officer testified that Holmes then reached into his pocket, grabbed the bag, took it out, threw it on the table and said, "You got me." The substance in the bag was subsequently identified as methamphetamine.

In reviewing a motion to suppress, we construe the evidence most favorably to uphold the trial court's findings and judgment and adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. *Strickland v. State*, 221 Ga. App. 120, 121-122 (2) (470 SE2d 508) (1996). The trial court's application of the law to undisputed facts is subject to de novo appellate review. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

Holmes argues that Mathis was not authorized to conduct a pat-down search under the facts of this case, and even if a pat-down search was authorized, Mathis exceeded the scope of a permissible pat-down when he seized the contraband from Holmes' pocket.

"Under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted."

(Citation and punctuation omitted.) *Thompson v. State*, 230 Ga. App. 131, 132 (495 SE2d 607) (1998). Holmes argues that Mathis's observation that he appeared nervous was not sufficient to authorize a reasonable belief that a pat-down was warranted for his protection and safety. But that is not the only basis for the pat-down in this case. The officers were at the residence in response to a call concerning suspicious activity suggesting drugs were being sold, and the owner of the residence had been arrested for possession of cocaine and was on probation. Mathis testified that, in his experience, weapons were often present when drugs were involved and that Holmes' behavior made him nervous. "It is not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed." (Punctuation and footnote omitted.) *State v. Cannon*, 253 Ga. App. 445, 447 (559 SE2d 76) (2002). The officers in this case were authorized to conduct a pat-down search to ensure that Holmes was not armed. *Thompson*, 230 Ga. App. at 133.

> Further, under what has been deemed the "plain feel" doctrine, "(i)f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Minnesota v. Dickerson*, 508 U. S. 366, 375-376 (113 SC 2130, 124 LE2d 334) (1993); *Seaman v. State*, 214 Ga. App. 878 (449 SE2d 526) (1994). Accordingly, contraband identified through an officer's sense of touch in the course of a lawful *Terry* patdown may be seized. *Howard v. State*, 220 Ga. App. 579, 581-582 (469 SE2d 746) (1996).

*Tukes v. State*, 236 Ga. App. 77, 79 (2) (a) (511 SE2d 534) (1999).

Holmes argues, however, that the seizure of the contraband in this case cannot be justified under the plain feel doctrine because the identify of the object was not immediately apparent to Mathis and he did not identify the object as contraband with the requisite certainty. We disagree. Mathis testified that he "pretty much" knew what the object was before he put his hand on it "just by the shape of it and the plastic bag," but that when he touched it, he "knew exactly what it was."

> It was unnecessary for the officer to "conclusively identify" what type of drug [Holmes] was carrying in order for the "plain feel" doctrine to make the seizure of the contraband

lawful. [Cit.] "Under the 'plain feel doctrine,' the officer was entitled to seize the item and the evidence was properly admitted. He was not compelled to ignore what was apparent to him upon feeling the object and to walk away instead. (Cits.)" *Andrews v. State*, 221 Ga. App. 492, 493 (471 SE2d 567) (1996). The trial court determined that the seizure of the [methamphetamine] was lawful. Based on the record, we do not find such determination clearly erroneous, and the motion to suppress was properly denied.

*Tukes*, 236 Ga. App. at 79. See also *Harris v. State*, 239 Ga. App. 537, 539 (1) (521 SE2d 462) (1999).
      *Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED JUNE 2, 2004.

*Sexton & Morris, Lee Sexton, Joseph S. Key*, for appellant.
      *Tommy K. Floyd, District Attorney, Sandra G. Rivers, Assistant District Attorney*, for appellee.