## A05A1532. CASTLEBERRY v. THE STATE.
(619 SE2d 747)

RUFFIN, Chief Judge.

Following a bench trial on stipulated facts, the trial court found Emory Castleberry guilty of possessing methamphetamine, possessing a gun during the commission of a crime, and running a red light. In his sole enumeration of error on appeal, Castleberry contends that the trial court erred in denying his motion to suppress. For reasons that follow, we reverse.

When reviewing a trial court's ruling on a motion to suppress, we construe the evidence in a light most favorable to upholding the trial court's judgment, and we adopt the trial court's findings on disputed facts and credibility unless clearly erroneous.[1] However, "[t]he trial court's application of the law to undisputed facts is subject to de novo appellate review."[2]

Here, the undisputed facts illustrate that on May 29, 2003, Officers Ivey and Ottoway of the Gainesville Police Department observed Castleberry drive through a red light in a Chevy Blazer, and they initiated a traffic stop. Upon approaching the passenger side of the car, Ottoway saw the barrel of a shotgun on the floor of the truck, and he ordered Castleberry to exit the vehicle. Castleberry was wearing cargo pants with multiple pockets, and when Ottoway patted Castleberry down for weapons, he discovered shotgun shells in one of the pockets.

Ottoway also asked Castleberry if he had any other weapons in the truck, and Castleberry responded "that he didn't know." Thus, Ottoway searched the vehicle that contained only the one shotgun, which had a sawed-off barrel. OCGA § 16-11-122 provides that "[n]o person shall have in his possession [a] sawed-off shotgun," which is defined as a shotgun "having one or more barrels less than 18 inches in length or if such weapon as modified has an overall length of less than 26 inches."[3] According to Ottoway, he was not sufficiently familiar with the relevant Code section to determine whether the gun was legal. But he claimed that he and the other officers "felt like that by just looking at [the gun] without measuring it . . . that it fell within

---

[1] See *Holmes v. State*, 267 Ga. App. 651, 652 (601 SE2d 134) (2004).

[2] Id.

[3] OCGA § 16-11-121 (5).

the length that would make it a sawed-off shotgun." Castleberry was thus charged with possessing a sawed-off shotgun, but when the gun was measured at the police station, it was determined that its overall length — 36 inches — was within the limit allowed by law.

After Castleberry had been stopped and the gun discovered, Officer Rutledge responded to a request for back-up. When he arrived at the scene, Rutledge noticed that Castleberry was acting "fidgety" and kept putting his hands in his pockets. For safety reasons, Rutledge asked Castleberry to keep his hands out, but Castleberry continued putting his hands in his pockets. Accordingly, Rutledge patted Castleberry down "for [his own] safety." During this search, Rutledge discovered a hard object in one of Castleberry's pockets. Rutledge then removed the object, which was a glass pipe of a type used to smoke narcotics. According to Rutledge, he would have removed anything hard that he felt could be used as a weapon to strike or stick him. Scrapings from the glass pipe tested positive for methamphetamine.

Castleberry ultimately was charged with, inter alia, possessing methamphetamine. Castleberry moved to suppress the evidence, and the trial court denied the motion. Castleberry challenges this ruling on appeal, arguing that: (1) the officers should have realized the shotgun was not illegal, and thus any subsequent detention was unreasonable; (2) Rutledge's second pat-down search was improper; and (3) even if the search was proper, Rutledge exceeded the permissible scope of the search when he reached in Castelberry's pocket to retrieve the glass pipe. We address each argument in turn.

1. In addressing Castleberry's motion to suppress, the threshold matter for the trial court's consideration was whether law enforcement officers had *reasonable, articulable suspicion* of criminal wrongdoing so as to justify a brief detention.[4] It is not whether the officer had probable cause to actually arrest Castleberry.[5] The mere fact that the shotgun did not violate the law is not dispositive.[6] The proper inquiry is whether the officers reasonably could have believed that the weapon violated the law. Here, Ottoway testified that the barrel of the gun had recently been sawed off and that he believed the gun was illegal. Under these circumstances, Ottoway acted reasonably in

---

[4] See *State v. Murphy*, 246 Ga. App. 246 (540 SE2d 231) (2000).

[5] See id.

[6] See *Turner v. State*, 274 Ga. App. 731 (618 SE2d 607) (2005) (although defendant's conduct did not constitute a crime, officer was nonetheless authorized to stop defendant based upon officer's reasonable, good faith belief that conduct was unlawful).

further detaining Castleberry to determine whether he had in fact violated the law.[7] Accordingly, this argument presents no basis for reversal.

2. Similarly, we do not believe that Rutledge's conduct in patting Castleberry down violated Fourth Amendment principles. It is well-settled that a law enforcement officer may, for his own protection and safety, pat-down a suspect to determine if that person is armed.[8] In this case, Rutledge testified that he was concerned because Castleberry kept putting his hands in his pockets, despite being asked not to do so. Thus, for his own safety, Rutledge patted Castleberry down. Rutledge testified that, when he conducted the search, he did not know whether Castleberry had already been searched. Given that Castleberry repeatedly put his hands in his pockets, Rutledge was justified in conducting the pat-down.[9]

3. Nonetheless, we do agree that Rutledge exceeded the permissible scope of a pat-down search by reaching into Castleberry's pocket. As this Court has recognized,

> [a] *Terry* pat-down, unlike a full search, is conducted for the purpose of insuring the safety of the officer and of others nearby, not to obtain evidence for use at trial. It is a minimal intrusion reasonably designed to discover guns, knives, clubs, or other weapons that could prove dangerous to a police officer. Under *Terry*, an officer is authorized to pat down a suspect's outer clothing. He may intrude beneath the surface in only two instances: (1) if he comes upon something that feels like a weapon, or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent, i.e., the "plain feel" doctrine.[10]

Here, the State contends that Rutledge was authorized to reach into Castleberry's pocket under the plain feel doctrine. This contention, however, is belied by the record. When Rutledge was asked, "it wasn't immediately apparent that [the object you felt] was drug paraphernalia, was it?" he responded, "No, sir. It was a hard-type object. It could have been anything like that."

The critical issue becomes whether the item in Castleberry's pocket felt like a weapon. In this regard, Rutledge testified that the item

---

[7] See id.; *Murphy*, supra.

[8] See *Mohamed v. State*, 276 Ga. 706, 710 (2) (583 SE2d 9) (2003); *Holmes v. State*, 267 Ga. App. 651, 652-653 (601 SE2d 134) (2004).

[9] See *Mohamed*, supra; *Satterfield v. State*, 251 Ga. App. 141, 144 (553 SE2d 820) (2001).

[10] (Footnotes omitted.) *Howard v. State*, 253 Ga. App. 158, 160 (558 SE2d 745) (2002).

felt like a hard object in the pocket. I don't know how long it was and so forth. It could have been a small numchuck. It could have been anything. . . . It could have been a lot bigger than a pencil. . . . It could have been sharp. . . . [It was a] round hard object, like I said, it could have been anything. It could have been a stick.

When asked whether he was able to immediately identify the object as a weapon, Rutledge shook his head negatively. In other words, Rutledge knew only that the object was hard, and he would have retrieved any item that fit this description.

Under virtually identical facts, this Court has found that an officer who knows only that an object is "hard" is not justified in reaching into a suspect's pockets to retrieve the object.[11] We held that, if this were the standard, it would eviscerate the protections of the Fourth Amendment.[12] Accordingly,

to satisfy the Fourth Amendment when dealing with what may be an unusual weapon, an officer must provide specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down. Only then can judges satisfy the Fourth Amendment's requirement of a neutral evaluation of the reasonableness of a particular search by comparing the facts with the officer's view of those facts.[13]

Given that Rutledge was unable to provide such specific facts to justify his concern that the item in Castleberry's pocket was a weapon, the trial court erred in denying Castleberry's motion to suppress.[14]

*Judgment reversed. Barnes, J., concurs. Johnson, P. J., concurs in the judgment only.*

DECIDED AUGUST 9, 2005.

*Fox, Chandler, Homans, Hicks & McKinnon, Graham McKinnon IV*, for appellant.

---

[11] See id. at 160-161.
[12] See id. at 161.
[13] (Punctuation and footnotes omitted.) Id.
[14] See id.

*Jason J. Deal, District Attorney, James V. Branch, Norris S. Lewis, Jr., Assistant District Attorneys,* for appellee.