**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 18, 2013**

# In the Court of Appeals of Georgia

A12A2159. KELLEY v. THE STATE.

MCFADDEN, Judge.

Ron O'Neal Kelley was charged with possession of cocaine, OCGA § 16-13-30 (a), and possession of tools for the commission of crime, OCGA § 16-7-20, after a law enforcement officer found cocaine and a digital scale in his pants pockets during the stop of a vehicle in which he was a passenger. The trial court denied Kelley's motion to suppress these items, and we granted interlocutory review. Because the search of Kelley's pockets exceeded the scope of a constitutionally permissible pat-down search, we reverse.

The officer who searched Kelley was the only person to testify at the suppression hearing, and the relevant facts are not in dispute. We review de novo the trial court's application of the law to these undisputed facts. *State v. Underwood*, 283

Ga. 498, 500 (661 SE2d 529) (2008); *Nunnally v. State*, 310 Ga. App. 183, 185 (2) (713 SE2d 408) (2011).

The officer testified that, on November 10, 2010, he attempted to stop a car that he observed speeding. The driver did not stop immediately but instead drove to a residence and parked in its driveway. The officer placed the driver in custody for attempting to elude police. By that time, a group of people had gathered around Kelley, who was sitting in the passenger seat of the car with his hands sticking out of the window. The officer dispersed the people and asked Kelley to get out of the car. He then performed a pat-down search of Kelley while Kelley held his hands in the air. During the pat-down search, he felt in one of Kelley's pockets a round object, slightly smaller than a piece of candy, that he could not identify. When he asked Kelley to identify the object, Kelley reached toward his pocket. At that point, the officer handcuffed Kelley, reached into his pocket and extracted a small bag of a substance later determined to be crack cocaine. He found a digital scale in one of Kelley's other pockets.

Kelley moved to suppress the items found in his pockets. The state, in opposing this motion, had the burden of proving that the officer's search was lawful. *Foster v. State*, 285 Ga. App. 441, 442 (646 SE2d 302) (2007). There is no evidence that the

2

search was conducted either pursuant to a warrant or with Kelley's consent and, as Kelley points out, the officer did not testify that, at the time of the pat-down search, he believed Kelley was armed and dangerous. See *Molina v. State*, 304 Ga. App. 93, 95-96 (695 SE2d 656) (2010) (officer must be able to point to particular facts from which he reasonably inferred that a person was armed and dangerous in order to perform self-protective search for weapons); *Teal v. State*, 291 Ga. App. 488, 489 (662 SE2d 268) (2008) (officer cannot, as a matter of general practice, pat down any person asked to exit a car, but instead must have a reasonable basis for concluding that the person is armed and presents a danger to the officer or others). Instead, the officer referred to his "standard operating procedure" of patting down any occupant of a car stopped for eluding, stated that he was "concerned" about the people who had approached the car at the house, and testified that he "did not know if [Kelley] was armed or not. That was the reason for the pat-down."

Notwithstanding the officer's failure to testify that he believed Kelley was armed and dangerous at the time of the stop, we will assume without deciding that the officer's expressed "concerns" about the vehicle driver's failure to immediately comply with the stop and about Kelley's interactions with bystanders at the stop gave the officer a reason to believe that Kelley was armed and dangerous and that the pat-

3

down search thus was constitutionally permissible under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). We nevertheless agree with Kelley that the state has failed to show the officer was authorized to go beyond the pat-down search and reach into Kelley's pockets. "A *Terry* pat-down [search], unlike a full search, is conducted for the purpose of ensuring the safety of the officer and of others nearby, not to obtain evidence for use at trial. It is a minimal intrusion reasonably designed to discover guns, knives, clubs, or other weapons that could prove dangerous to a police officer." (Citation omitted.) *Sudduth v. State*, 288 Ga. App. 541, 542 (2) (654 SE2d 446) (2007). Accordingly, an officer may intrude beneath the surface of a suspect's outer clothing in only two instances: "(1) if he comes upon something that feels like a weapon, or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent." (Citation omitted.) Id. The officer must express a degree of certainty in identifying the item as contraband, id., although the officer need not "conclusively identify" it as a specific drug. *Holmes v. State*, 267 Ga. App. 651, 653 (601 SE2d 134) (2004).

The officer's testimony in this case does not support his intrusion into Kelley's pockets. He stated that he retrieved the round object in Kelley's pocket "for officer safety" because he was concerned about Kelley putting his hands on that item. But

4

when asked whether he thought the round object was a weapon, the officer responded, "I didn't know at that particular time that I had my hand on it. It was still inside his pocket." The officer then reiterated, "I didn't know what [the object] was at the time it was in his pocket and I could not see that object." We have held that an officer is not authorized during a pat-down search to intrude into a defendant's pocket to retrieve an item that the officer cannot identify, simply because the officer believes the item could be a weapon or could contain a weapon. See *Brown v. State*, 293 Ga. App. 564, 565-566 (1) (667 SE2d 410) (2008) (officer testified that he felt a "hard foreign object" in the defendant's pocket, that he did not know what the object was, but that "anything can house a weapon"); *Howard v. State*, 253 Ga. App. 158, 159-162 (558 SE2d 745) (2002) (officer testified that he felt in defendant's pocket a "very hard and round object," that he was "really unsure of what it was at that time," and that he "could not rule out 'specifically' that the object . . . might be a weapon"). While an officer need not

> be absolutely positive that an object is a weapon in order to protect himself by looking to make sure, . . . to satisfy the Fourth Amendment when dealing with what may be an unusual weapon, an officer must provide specific and articulable facts which reasonably support a suspicion that the particular suspect is armed with an atypical weapon which would feel like the object felt during the pat-down [search].

5

(Citations and punctuation omitted.) *Howard*, 253 Ga. App. at 161. Cf. *Mohamed v. State*, 276 Ga. 706, 710 (2) (583 SE2d 9) (2003) (officer authorized to intrude into defendant's pocket after feeling what he believed to be firm plastic cards where his testimony showed that, at time he reached into pocket, he knew defendant had already lied about two items in his pockets that could be used as weapons and he knew that the sort of objects he felt in the pocket could be fashioned into weapons).

The state cites *Pace v. State*, 219 Ga. App. 583 (466 SE2d 254 (1995), for the proposition that Kelley's act of moving his hand toward his pocket gave the officer a basis to search his pockets. But the officer in *Pace*, who had searched the defendant's pocket without first conducting a pat-down search, testified that the defendant "was obviously reaching for something that we felt was a threat to us" and pointed to other, specific facts that supported a reasonable belief that the defendant was reaching for a weapon. Id. at 584-586. Here, in contrast, even after having felt the object in Kelley's pocket, the officer was unable to state that he thought it was a weapon of any kind or point to any other, specific facts that would support such a belief.

Because the officer did not testify either that the object he felt in Kelley's pocket felt like a weapon or that its identity as contraband was immediately apparent

6

from its contour or mass, the trial court erred in refusing to suppress the evidence seized from Kelley's pockets. See *Brown*, 293 Ga. App. at 566 (1).

*Judgment reversed. Barnes, P. J. concurs. McMillian, J., concurs specially and in the judgment only.*

# In the Court of Appeals of Georgia

A12A2159. KELLEY v. THE STATE.

MᴄMɪʟʟɪᴀɴ, Judge, concurring specially and in judgment only.

I concur in the judgment only. Although I agree with the outcome of this case, I do not believe that the majority needs to reach the issue of whether the search of Kelley's pockets exceeded the scope of the patdown search because the patdown search was not constitutionally permissible under *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968). See *Molina v. State*, 304 Ga. App. 93, 95 (695 SE2d 656) (2010) (holding that "an initial frisk must be 'supported by a reasonable belief that [the defendant] was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a pat-down of a person for weapons.'") (Citation omitted.) Here, the officer unequivocally testified that he did not intend to arrest Kelley when he asked Kelley to exit the vehicle and that he had no reason to

believe that Kelley was armed at that time. Accordingly, the trial court erred in denying Kelley's motion to suppress.