A95A2353. HOWARD v. THE STATE.
(469 SE2d 746)

MCMURRAY, Presiding Judge.

Defendant, along with co-defendant Richard A. Hearn, was charged in an indictment with "TRAFFICKING IN COCAINE," for knowingly possessing 28 grams or more of a mixture containing at least ten percent cocaine. The co-defendant was also charged with "WEAVING ALONG ROADWAY," for failing to drive a vehicle "as nearly as practicable within a single lane," on Interstate 95 in McIntosh County, Georgia. The evidence at their joint jury trial revealed the following:

At approximately 7:00 p.m. on May 13, 1994, then-Trooper R.

Ogden of the Georgia State Patrol initiated a traffic stop. Trooper Bengie Hodges arrived to assist. State's Exhibit 4 is a videotape of that traffic stop, which was played for the jury. Trooper Ogden observed as the vehicle "crossed into the emergency lane on a couple of occasions. . . ." Trooper Ogden decided to stop the car and "check on the status of the driver and see what the condition of the driver was." The vehicle was driven by co-defendant, Richard A. Hearn with defendant in the front passenger seat. Trooper Hodges spoke with Richard A. Hearn, who told Trooper Hodges that the pair had been fishing in Pompano Beach for "about three days, four days." Although Richard A. Hearn did not appear to be under the influence of alcohol, he was "talkative and he appeared somewhat nervous[; . . .] a little more nervous . . . than normal." While Trooper Ogden was issuing a courtesy warning for weaving, he "observed that the tag on the [vehicle] had expired[.]" Richard A. Hearn informed Trooper Ogden that the car was "owned by the passenger's mother and . . . that the passenger was a friend of his." Richard A. Hearn consented to Trooper Ogden's search of the vehicle but told the officer to ask permission of the passenger (defendant), since he, Richard A. Hearn, "was not the owner of the vehicle." When Trooper Ogden spoke with defendant, the latter "stated they had been down to Fort Lauderdale [about two days] . . . to pick his rent check up." Trooper Ogden requested permission to search the vehicle and defendant gave him "an affirmative response." Defendant "stepped from the passenger's side of the car and [Trooper Ogden] began to pat him down [for weapons]." This patdown or frisk was performed in accordance with policy "strictly for safety." Trooper Ogden located a bulge, "a hard object in [defendant's] groin and [he] immediately had [defendant] place his hands on the vehicle." At this time, Trooper Ogden "didn't know what [he] was dealing with. [He] knew there was an object down there that shouldn't be there. . . ." Trooper Ogden told defendant "on several occasions, 'Do not take your hands from the vehicle.'" Trooper Ogden "went into [defendant's] [sweat] pants and retrieved the item, . . . a plastic bag with a white powder substance, [. . . which Trooper Ogden] felt like . . . was cocaine." At that point, Trooper Ogden told Trooper Hodges to "cuff the driver . . . [as he] began cuffing the passenger." Defendant and Richard A. Hearn were informed that they were under arrest for trafficking in cocaine. After a tow truck was summoned, the officers performed an inventory search of the vehicle. Trooper Ogden identified State's Exhibit 1 as "the cocaine [he] pulled from the groin area of [defendant]." State's Exhibit 2 consisted of "white socks with a plastic bag with several small plastic bags, ziplock[-type], inside," found in the rear seat of the car. Both Trooper Ogden and Trooper Hodges testified that, in their experience, such small plastic bags are used for "placing small

amounts of controlled substances[.]" State's Exhibit 3, also discovered during the inventory search, is a small set of "scales that Trooper Hodges located inside the vehicle." Both Trooper Ogden and Trooper Hodges testified that the small plastic scales in State's Exhibit 3 are for "measuring very small amounts [of contraband . . . to determine] an exact amount that would be in the [small plastic] bags." Colleen Reilley, a forensic chemist in the drug identification section of the Georgia Bureau of Investigation, identified the white powder, weighing 2.9 ounces or 81.5 grams as "positive for cocaine." This cocaine was "70 percent pure." The straw also was "positive for cocaine." In Trooper Ogden's experience, "it appeared that the cocaine would have been packaged for sale."

The trial court granted Richard A. Hearn's motion for directed verdict of acquittal. The jury found defendant guilty of trafficking in cocaine. His motion for new trial was denied and this appeal followed. *Held*:

1. Defendant enumerates the denial of his motion to suppress. First, he argues that no patdown or frisk was authorized because Trooper Ogden articulated no reasonable suspicion that these suspects were "armed and dangerous. . . ." Second, he argues the patdown exceeded lawful bounds because Trooper Ogden was unable to specify anything about this bulge in defendant's sweat pants that justified the intrusive search "inside of [defendant's] clothing in the area of his genitals." We disagree.

Trooper Ogden testified that he conducted a patdown of defendant strictly for safety. The suspicions of Trooper Ogden that defendant might be bringing contraband into Georgia were reasonably aroused by the conflicting stories given by the nervous driver and defendant as to the purpose of their short visit to Florida and the time spent there. *Moon v. State*, 194 Ga. App. 777 (1) (392 SE2d 19). See also *Morgan v. State*, 195 Ga. App. 732, 734 (3), 735 (394 SE2d 639). "Accordingly, [in the case sub judice, Trooper Ogden] was authorized to conduct a minimally intrusive pat-down to determine whether [defendant] was armed." *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321). Although defendant complains that Trooper Ogden "utterly failed to try and confirm or eliminate . . ." any inconsistency in the conflicting versions, this Court is not aware of any "constitutional provision which would require that the officer stake his life on [a drug suspect's] explanation rather than upon the officer's own determination of whether [that drug suspect] was armed." *Hayes v. State*, 202 Ga. App. 204, 205, supra. Defendant's contention that Trooper Ogden was not authorized to conduct a patdown search for weapons is without merit.

In *Minnesota v. Dickerson*, 508 U. S. 366 (113 SC 2130, 124 LE2d 334) the Supreme Court of the United States "approved the 'plain

feel' or 'plain touch' corollary to the 'plain view' doctrine, holding that if contraband is identified through an officer's sense of touch in the course of a lawful *Terry* patdown, it may be seized. 124 LE2d at 345-347." *Seaman v. State*, 214 Ga. App. 878, 879 (2) (449 SE2d 526). The rationale is that if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context. In the case sub judice, defendant is quite correct that Trooper Ogden never expressly testified whether he thought the bulge in defendant's pants was a weapon or whether he thought it was contraband. But the videotape of this patdown indicates that the suspicious (and possibly dangerous) nature of the bulge was immediately apparent to Trooper Ogden. Given the stern warning Trooper Ogden gave defendant to keep his hands on the car the second the patdown began, the inference is authorized that defendant resisted the patdown, adding a sense of urgency to the circumstances. We agree with the trial court that the plastic bag containing nearly three ounces of cocaine which defendant concealed in his groin was properly admitted under the Fourth Amendment's "plain feel" or "plain touch" exception as enunciated by the Supreme Court of the United States in *Minnesota v. Dickerson*, supra. The denial of defendant's motion to suppress was correct.

2. Defendant enumerates the refusal of the trial court to give his written request to charge on possession of cocaine as a lesser offense included within the indicted offense of trafficking in cocaine.

"In *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550), the Georgia Supreme Court expressly disapproved of that line of authority which had held that a lesser-included offense need not be charged unless the evidence showed that the defendant was guilty *only* of the lesser crime, and held that 'the correct rule is that a written request to charge a lesser included offense must *always* be given if there is *any* evidence that the defendant is guilty of the lesser offense.' " (Emphasis in original.) *Galbreath v. State*, 213 Ga. App. 80, 81 (1) (443 SE2d 664). The complete rule includes this corollary: where the State's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense. *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444); *King v. State*, 214 Ga. App. 311, 313 (3), 314 (447 SE2d 645).

"Any person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more

of cocaine, . . . commits the felony offense of trafficking in cocaine. . . ." OCGA § 16-13-31 (a) (1). Simple possession of any amount of cocaine is proscribed by OCGA § 16-13-30 (a) which provides: "Except as authorized . . . , it is unlawful for any person to purchase, possess, or have under his control any controlled substance." Since the indictment in the case sub judice alleged that defendant possessed more than 28 grams of cocaine, we hold that simple possession of cocaine was a lesser offense included as a matter of fact in the greater indicted offense of trafficking by possessing more than 28 grams of cocaine. See *Hancock v. State*, 210 Ga. App. 528, 533 (3) (c) (437 SE2d 610). See also *State v. Estevez*, 232 Ga. 316, 317 (1), 320 (206 SE2d 475) (where the evidence showed only a single possession of cocaine, "the illegal possession was included in the crime of illegal sale as a matter of fact under Code Ann. § 26-505 (a) [now OCGA § 16-1-6 (1)])." Compare *Galbreath v. State*, 213 Ga. App. 80, 81 (1), supra (possession of marijuana is not a lesser included offense of manufacturing marijuana by cultivating or planting as a matter of law and was not, in that instance, included as a matter of fact). Consequently, defendant's written request to charge on simple possession of cocaine was adjusted to the evidence and the trial court erred in refusing to give it. Nevertheless, we hold that in light of the overwhelming evidence that defendant actually possessed one 80-gram packet of cocaine, it is highly probable that the failure to give his requested instruction did not contribute to the verdict. *Edwards v. State*, 264 Ga. 131, 133, supra. Consequently, the erroneous failure to give this instruction was harmless. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869).

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED FEBRUARY 28, 1996 —
RECONSIDERATION DENIED MARCH 12, 1996 —

*Lane & Crowe, Grayson P. Lane*, for appellant.
*Dupont K. Cheney, District Attorney, Charles D. Howard, Assistant District Attorney*, for appellee.