A06A0153. PARNELL v. THE STATE.
(634 SE2d 763)

PHIPPS, Judge.

A jury found David Parnell III guilty of aggravated assault and aggravated battery against Allyson Schneider and possession of more than one ounce of marijuana. The count of aggravated assault was merged with the count of aggravated battery, and Parnell was convicted of aggravated battery and felony possession. On appeal, Parnell contends that the evidence did not authorize the verdicts and that the trial court erred in overruling his claim of ineffectiveness of trial counsel. Because Parnell has demonstrated no basis for reversal, we affirm.

1. Parnell contends that there was insufficient evidence for the jury to find him guilty of any of the charges.

---

On appeal, evidence is viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[1] We neither weigh the evidence, nor judge witness credibility, but determine only whether the evidence was sufficient for a rational trier of fact to have found the defendant guilty beyond a reasonable doubt.[2]

The state presented as a witness Alice Echols. She testified that one night in November 2002, she and a mutual friend of Parnell were sitting in her car parked behind the apartment building where Parnell lived on Adams Circle. Echols recalled seeing Parnell outside holding a knife. She testified that moments later, Parnell came to her car angry and complained that "some bitches had come . . . to his door and started something with him." Echols recalled that Parnell told their friend, seated in the car, "what [had] happened, and that [Parnell] was a gangster and all that." Parnell got into her car and asked to be driven away. She complied, passing an approaching ambulance.

Emergency help had been summoned to an apartment a few doors from Parnell's apartment because residents there learned that Schneider had been stabbed in the chest. Schneider described his attacker to police officers, and the description was broadcast over police radio.

Meanwhile, police stopped Echols's car in Parnell's neighborhood. The car matched a broadcast description of a car an officer responding to the crime scene had observed leaving the apartment building of the reported stabbing and then proceeding, without the use of headlights, the wrong way down a one-way street. Police officers thereafter determined that Parnell matched the broadcast description of the man who had committed the stabbing. An officer conducting a pat-down of Parnell's person pulled from Parnell's pocket more than an ounce of marijuana.

Parnell was arrested and held at a detention center. When an officer explained to Parnell that his blood would be searched pursuant to a warrant because of a blood stain on his shirt, Parnell blurted, "Well, it was self-defense, man."

At trial, Schneider identified Parnell as the person who stabbed him. Parnell's trial counsel asked Schneider whether the stabbing was in self-defense. Schneider answered no, relating that Parnell had approached him from behind, called his name, and then stabbed him when he turned around. Schneider further testified that he had not known Parnell's name, had never before had an altercation with

---

[1] *McKee v. State*, 275 Ga. App. 646, 647 (1) (621 SE2d 611) (2005).

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Parnell, had never been to Parnell's residence, and had held nothing in his hands at the time of the incident.

(a) Challenging the verdict on the felony possession count, Parnell argues that there was no evidence that the marijuana found in his pocket weighed more than an ounce.

However, the state submitted into evidence two lab reports concerning the marijuana at issue. One report stated that the marijuana weighed 1.711 ounces; the other report stated that the marijuana weighed 27.3 grams. In light of the former, we reject Parnell's claim that there was no evidence that the marijuana found weighed more than an ounce.[3] Thus, we uphold Parnell's conviction for felony possession of marijuana.[4]

(b) Challenging the verdict on the aggravated assault count, Parnell argues that the element of intent was not shown. He cites evidence that he claims shows that the stabbing was in self-defense. But Schneider's account authorized the jury to reject that theory. A rational trier of fact could have found that the stabbing was not justified and found proof of Parnell's guilt of aggravated assault beyond a reasonable doubt.[5]

(c) Challenging the verdict on the aggravated battery count, Parnell argues that the stabbing left no part of Schneider's body seriously disfigured. A person commits aggravated battery "when he or she maliciously causes bodily harm to another by . . . seriously disfiguring his or her body or a member thereof."[6] "Because the circumstances of each aggravated battery vary, whether disfigurement is serious is best resolved by the factfinder on a case-by-base basis."[7] And there is no requirement that the disfigurement be permanent.[8]

Schneider testified that, because of the stabbing, he was hospitalized for three days. His treating physician testified that the stabbing had violated Schneider's skin and fatty tissue and exposed his sternum, but had not gone through significant intrathoracic organs. However, the presence of air directly underlying the breast

---

[3] See *Coffey v. State*, 141 Ga. App. 254 (1) (233 SE2d 243) (1977) (whether defendant shall be found guilty of a felony or misdemeanor (possession of one ounce or less) depends upon the proof at trial).

[4] See *Jackson*, supra; *Coffey*, supra.

[5] *Jackson*, supra; *Weems v. State*, 268 Ga. 142, 143 (1) (485 SE2d 767) (1997); *Palmer v. State*, 243 Ga. App. 656, 657 (533 SE2d 802) (2000) (intent may be found by the jury upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is being prosecuted; and whether a defendant has the requisite intent to commit a crime is a question for the jury).

[6] OCGA § 16-5-24 (a).

[7] *Williams v. State*, 248 Ga. App. 316, 318 (1) (546 SE2d 74) (2001).

[8] Id.

bone, where no air should have been, indicated to the doctor that the tip of the knife had penetrated the sternum or had slipped to the side of the sternum and then punctured the tissues immediately underneath the sternum. Pictures of Schneider's wound taken on the night of the incident were shown to the jury. Schneider displayed to the jury the scar left by the wound. He further testified that for a month after the incident, he suffered intermittent shortness of breath and heavy chest pain; and that for about eight months, he was unable to work his job as a machine operator cutting metal. We conclude that there was sufficient evidence authorizing the jury to find the element of serious disfigurement.[9]

2. Parnell contends that the trial court erred in rejecting his claim of ineffective assistance of counsel. To prevail on this contention, Parnell must establish, pursuant to *Strickland v. Washington*,[10] that his trial counsel's performance was deficient and that a reasonable probability exists that, but for the deficient performance, the trial would have had a different outcome.

> Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[11]

We need not address both components of the *Strickland* test if the showing on one is insufficient; nor must we address the components in any particular order.[12]

(a) Parnell argues that his trial counsel was ineffective for stipulating that the marijuana weighed more than an ounce. Because the record shows that there was no such stipulation,[13] this argument is without merit.

---

[9] See *McClain v. State*, 232 Ga. App. 282-283 (1) (502 SE2d 266) (1998) (sufficient evidence of serious disfigurement was shown, where victim was badly burned and suffered keloid scarring); *Miller v. State*, 155 Ga. App. 54, 55-56 (4) (270 SE2d 466) (1980) (sufficient evidence of serious disfigurement was shown, where victim was shot three times, required hospitalization and an operation to remove a bullet from his stomach, and was left with six scars from the gunshot wounds and a large scar from the operation to remove a bullet); compare *Williams*, supra at 319 (where state adduced no evidence from which the jury could infer that the victim's injuries were more significant, grave, or severe than the superficial, visible wounds that would typically support a battery conviction under OCGA § 16-5-23.1, the state failed to carry its burden of proving the "seriously disfiguring" element of aggravated battery).

[10] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[11] *Bruce v. State*, 268 Ga. App. 677, 679 (603 SE2d 33) (2004) (footnotes omitted).

[12] *Turner v. State*, 253 Ga. App. 760, 763 (6) (560 SE2d 539) (2002).

[13] See Division 1 (a), supra.

(b) Parnell argues that his trial counsel was ineffective for failing to file a motion to suppress the marijuana. Parnell claims that the search of his person and the ensuing seizure of the drug violated his constitutional rights. Parnell also points out that the state did not call as a witness the officer who searched him and seized the marijuana from his pocket.

However, the state did call as a witness Jonnie Moeller, the police officer who stopped Echols's car and thereafter observed the discovery of the marijuana by Police Officer Fabian. Moeller was responding to the report of the stabbing when he spotted in the vicinity of the stabbing location the vehicle described in the dispatch and stopped it. Moeller asked the driver, Echols, where they had been, and she responded "Adams Circle." When Moeller asked for a particular location on Adams Circle, Parnell "started speaking up over the driver . . . saying, 'We are just coming from Adams Circle; that's all, just Adams Circle.' " In response to other questions, Echols informed Moeller that she had seen Parnell with a knife at Adams Circle. Moeller recounted that, meanwhile, Officer Fabian arrived. Moeller testified,

> We took each passenger out of the car. . . . We got Mr. Parnell out first because he matched the description of the lookout of the person we were looking for. . . . When we got Mr. Parnell out, initially our first task was just to make sure that he did not have the knife still on him. We padded [sic] him down. However, when we padded [sic] him down initially, Officer Fabian felt an object in his pocket that he immediately recognized as marijuana.

The prosecutor asked Moeller, "Now, how do you know that Officer Fabian felt an object that he immediately recognized it?" Moeller answered, "I was standing there as he padded [sic] him. . . . I saw him feel an object, and then he looked at me, and then he pulled it out and dropped it on the ground. I saw that it was a baggie of marijuana."

A reasonable search for weapons for the protection of the police officer is permitted

> where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the

circumstances would be warranted in the belief that his safety or that of others was in danger.[14]

Implicit in this rule of law is the prerequisite determination that the officer actually concluded that the suspect was armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a protective pat-down would not be unreasonable in the given set of circumstances.[15]

The evidence showed that Moeller and Fabian knew that a stabbing had been reported moments before at an apartment building located on Adams Circle. Moeller stopped a car that matched the description of one that had departed suspiciously from the crime scene. The occupants' responses that they were leaving Adams Circle further indicated that the car was the one described in a broadcast. Parnell's appearance was consistent with the broadcast describing Schneider's attacker. Echols informed Moeller that Parnell had a knife at Adams Circle, and Parnell's injection about their recent whereabouts appeared purposely vague, evasive, and dismissive. Because a reasonably prudent man under these circumstances would have been warranted to believe that his safety or that of others was in danger, the officers were authorized to take appropriate, self-protective measures.[16] Thus, contrary to Parnell's claim, Officer Fabian's action of conducting a frisk and patting Parnell's clothing in search of a weapon was constitutionally permissible.[17]

It was during this lawful pat-down search that Fabian felt and then seized from Parnell's pocket a baggie of marijuana.

Under [the plain feel doctrine], if, during a lawful pat-down search, an officer feels an object whose contours or mass makes it immediately identifiable as contraband, that officer can seize the item. Thus, for evidence to be admissible under the plain feel doctrine, the searching officer must express a degree of certainty in identifying the item. This is so because a pat-down search is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial.[18]

---

[14] *Terry v. Ohio*, 392 U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968).

[15] *Edgell v. State*, 253 Ga. App. 775, 777 (560 SE2d 532) (2002).

[16] See *Edwards v. State*, 264 Ga. 615, 616 (2) (449 SE2d 516) (1994); *Woods v. State*, 275 Ga. App. 340, 343-344 (1) (b) (620 SE2d 609) (2005); *Chaney v. State*, 207 Ga. App. 72 (427 SE2d 63) (1993).

[17] See *Edwards,* supra; *Woods,* supra; *Chaney,* supra.

[18] *Patman v. State*, 244 Ga. App. 833, 834-835 (537 SE2d 118) (2000) (punctuation, footnotes and emphasis omitted).

In arguing that trial counsel was ineffective for failing to pursue a motion to suppress, Parnell relies on the fact that Fabian was not called as a witness. "[Parnell] is quite correct that [Fabian] never . . . testified whether he thought the bulge in defendant's [pocket] was a weapon or whether he thought it was contraband. But [Moeller's observation] of this patdown indicates that the suspicious . . . nature of the bulge was immediately apparent to [Fabian]."[19]

> Failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel. Since [Parnell] is alleging that ineffectiveness was exhibited by trial counsel's failure to file a motion to suppress, [he] must make a "strong showing" that the evidence would have been suppressed had a motion to suppress been filed.[20]

As Parnell did not call Fabian at the motion for new trial hearing and in light of Moeller's account of Fabian's pat-down and ensuing seizure of the contraband, Parnell has not made this requisite showing.[21]

(c) Parnell argues that his trial counsel rendered ineffective assistance by forbidding him to testify, claiming that his testimony would have illuminated his claim of self-defense. At the motion for new trial hearing, Parnell asserted that his trial lawyer had warned him that his criminal history might be revealed and that the jury might find him guilty based on that alone.

The decision whether to testify in one's own behalf rests ultimately with the defendant after consultation with his counsel.[22] Parnell's trial attorney testified at the motion for new trial hearing that he strongly advised Parnell to testify, but that Parnell rejected his advice. The trial court was authorized to resolve this evidentiary conflict to find that Parnell's attorney advised Parnell to testify and that the decision that Parnell would not testify was his own.

(d) Parnell argues that his trial counsel was ineffective for failing to raise a continuing witness objection to Echols's police statement going out with the jury.[23] Echols wrote in her statement that on the night of the incident, she saw a knife in Parnell's hand at the

---

[19] *Howard v. State*, 220 Ga. App. 579, 582 (1) (469 SE2d 746) (1996).

[20] *Roberts v. State*, 263 Ga. 807, 809 (2) (e) (439 SE2d 911) (1994) (citation omitted).

[21] Id.; *Howard*, supra.

[22] *Van Alstine v. State*, 263 Ga. 1, 2-3 (426 SE2d 360) (1993).

[23] *Tibbs v. Tibbs*, 257 Ga. 370-371 (359 SE2d 674) (1987) (" 'continuing witness' objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand[; but,] it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once").

apartment and that when Parnell later got into her car, he told her to drive and proclaimed that he was a "gansta and stuff like that." Echols additionally wrote, "I heard [Parnell] then say I stabbed someone cause I'm not a bitch. He went on to tell about a group of bitches coming to his door."

However, in light of the strength of the evidence that was properly presented to the jury, we conclude that Parnell has not shown that a reasonable probability exists that, but for the jury having Echols's statement during its deliberations, the outcome of his trial would have been different.

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED MAY 30, 2006 —
RECONSIDERATION DENIED JULY 26, 2006.

*Louis M. Turchiarelli,* for appellant.
*Patrick H. Head, District Attorney, Sandra G. Dawson, Amelia G. Pray, Assistant District Attorneys,* for appellee.