## A02A1243. THE STATE v. PRITCHETT.
(569 SE2d 616)

BLACKBURN, Chief Judge.

The State appeals the trial court's grant of William Nelson Pritchett's motion to suppress evidence related to one count of violation of the Georgia Controlled Substances Act. The trial court based its ruling upon a finding that there was no evidentiary basis of record

[5] *Hewatt v. State*, 216 Ga. App. 550, 551 (2) (455 SE2d 104) (1995).
[6] *Martin v. State*, 246 Ga. App. 708, 709 (1) (541 SE2d 692) (2000).

for the pat-down search or the search that followed. The trial court held, inter alia, that:

> Here, the record is devoid of the nature of the search conducted of the Defendant. There is no mention of the pat-down search being a result of the officer's apprehension for his safety. Additionally, the officer testified that he was unaware of the nature of the packet, until he removed the packet from the Defendant's pocket. This testimony tends to show that the contents of the packet were not immediately known to be contraband. Further, the officer testified that the defendant was not "arrested" until the officer discovered that the small packet [contained] the two pills. This testimony leads this Court to conclude that the search of the contents of Defendant's pocket did not occur as a result of a lawful arrest. Accordingly, this Court finds that the officer exceeded the scope of a pat-down search under the *Buffington*[1] and *Howard*[2] decisions.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Punctuation omitted.) *Barnes v. State.*[3] Moreover, "[t]he burden of proving a search was lawful is on the state. OCGA § 17-5-30 (b)." Id.

Testimony at the hearing on the motion to suppress shows that on July 31, 2000, Officer Carlton Speed of the Banks County Sheriff's Office was traveling north when he passed Pritchett, who was traveling south on his motorcycle at a speed which appeared to be in excess of the 55-mph limit. When his radar indicated that Pritchett was traveling at 70 mph, Speed turned around, pursued Pritchett, and brought him to a stop.

Speed asked Pritchett for his driver's license and proof of insurance, both of which Pritchett produced. A check on Pritchett's license revealed that it was not of the proper class for operation of a motorcycle. Speed cited Pritchett for driving with the wrong class of license

---

[1] *Buffington v. State*, 229 Ga. App. 450 (494 SE2d 272) (1997).
[2] *Howard v. State*, 253 Ga. App. 158 (558 SE2d 745) (2002).
[3] *Barnes v. State*, 228 Ga. App. 44 (491 SE2d 116) (1997).

and with speeding. The State concedes that Pritchett was not arrested for the license violation. Pritchett was not arrested for the speeding violation but was given a ticket. This occurred before the search.

At some point, Speed noticed the tip end of a spoon protruding from Pritchett's clothing, which he immediately recognized as a spoon. It is disputed whether the spoon was in the back or front pocket of his pants. Speed asked Pritchett what he had in his pocket, and it is disputed what Pritchett replied. At this point, Speed patted down all of Pritchett's pockets and removed the contents thereof, a spoon, a syringe, and a clear piece of plastic with two pills in it. Speed then arrested Pritchett.

1. In its first enumeration of error, the State argues that Speed's seizure of the contraband in Pritchett's pocket was authorized under the "plain feel" doctrine as set forth in *Minnesota v. Dickerson*.[4] This argument, however, presupposes that the initial pat-down search of Pritchett was lawful, which the trial court concluded it was not. It further is dependent on the officer's recognition of contraband on the pat-down, which the trial court concluded he did not, based upon his testimony as addressed in the court's order.

A pat-down search of the outer clothing of an individual is authorized under *Terry v. Ohio*[5] in certain limited circumstances. *Terry* held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officers or others," he has "the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry*, supra at 24. "Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons." *Ybarra v. Illinois*.[6]

Because "[a] *Terry* pat-down, unlike a full search, is conducted for the purpose of insuring the safety of the officer and of others nearby, not to obtain evidence for use at trial," *Howard*, supra at 160, the search will not be found constitutionally permissible if it is not supported by a reasonable suspicion that the suspect was armed and presently dangerous. In *Ybarra v. Illinois*, the State argued that, despite the absence of probable cause, its pat-down search of a suspect was a reasonable frisk for weapons under *Terry*. The Court rejected the argument, finding that "[t]he initial frisk of Ybarra was simply not supported by a reasonable belief that he was armed and presently dangerous, a belief which this Court has invariably held

---

[4] *Minnesota v. Dickerson*, 508 U. S. 366 (113 SC 2130, 124 LE2d 334) (1993).
[5] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).
[6] *Ybarra v. Illinois*, 444 U. S. 85, 93-94 (100 SC 338, 62 LE2d 238) (1979).

must form the predicate to a patdown of a person for weapons." *Ybarra*, supra at 92-93. The Court noted that when the police first encountered Ybarra,

> they neither recognized him as a person with a criminal history nor had any particular reason to believe that he might be inclined to assault them. Moreover, as Police Agent Johnson later testified, Ybarra, whose hands were empty, gave no indication of possessing a weapon, made no gestures or other actions indicative of an intent to commit an assault, and acted generally in a manner that was not threatening.

Id. at 93. The Court also noted that there was nothing unusual about Ybarra's clothing. In light of these facts, the Court concluded that the State was "unable to articulate any specific fact that would have justified a police officer at the scene in even suspecting that Ybarra was armed and dangerous." Id.

"As in *Ybarra*, the [S]tate is unable to articulate any specific fact that justified [Officer Speed] in suspecting that [Pritchett] was armed and dangerous." *Clark v. State*.[7] On the contrary, Speed testified that when he initiated the traffic stop, Pritchett pulled over immediately, gave him no trouble, and "was very cooperative." When asked if he had felt at any time that Pritchett was armed or had a gun, he replied in the negative. Before leaving the stand, Speed again stated that Pritchett had been very cooperative and even agreed that Pritchett appeared to be a "very nice fellow." Under these circumstances, we agree with the trial court's ruling, as the State has not articulated any cogent basis for conducting the pat-down search of Pritchett and thus "has not met its burden of establishing that the search was lawful." *Barnes v. State*, supra at 46.

We point out that even if the initial pat-down in this case had been lawful, the officer was not authorized to pull the syringe and pills from Pritchett's pocket. A police officer "may intrude beneath the surface [of a suspect's clothing] in only two instances: (1) if he comes upon something that feels like a weapon, or (2) if he feels an object whose contour or mass makes its identity as contraband immediately apparent, i.e., the 'plain feel' doctrine." (Footnotes omitted.) *Howard*, supra at 160.

On cross-examination at the hearing on the motion to suppress, Speed testified as follows:

Q: Then what happened?
A: At that time, I patted him down and pulled the spoon out of his pocket.

[7] *Clark v. State*, 235 Ga. App. 569, 572 (2) (510 SE2d 319) (1998).

Q: You patted both pockets down or just the one you saw the spoon in?

A: I patted all pockets down.

Q: And you didn't see — the only thing you felt was the spoon?

A: Uh-huh (affirmative).

Q: So you pulled —.

A: I felt a little syringe.

Q: Well, you felt a syringe in the same pocket?

A: Uh-huh (affirmative).

Q: You knew it was a syringe when you patted him down?

A: When I felt it — after I done it like that right there (indicating), I pushed it up and saw the orange top come up.

Q: So you pulled — you pulled — you got them out?

A: Uh-huh (affirmative).

Q: He didn't consent for you to do that. You just took them out?

A: At that time, when I saw it in plain sight, when I asked him what he had in his pocket, he said, "Nothing." I patted him down, pulled the spoon out. From my experience and training, I knew that may — it was possible something else was there.

Q: But that's the only indication you had that there might be contraband was the spoon?

A: Yes, sir.

Q: So you found the syringe in the same pocket?

A: Yes, sir.

Q: And you found, you said, aluminum foil with something in it?

A: No, it was clear.

Q: Clear?

A: Clear Saranwrap.

Q: Saranwrap?

A: Not Saranwrap. Just a small clear piece of plastic that had two pills in it.

This testimony indicates that, during the pat-down, Speed did not come upon something that felt like a weapon, nor did he feel objects whose contour or mass made their identity as contraband immediately apparent, as is required by the "plain feel" doctrine. On the contrary, the testimony indicates that Speed did not know that one object he felt in the pocket was a syringe until after he had manipulated it in such a way so as to push the orange end of the syringe out of the pocket and into plain view, and that he could not identify the other object as a clear plastic packet of pills until he had pulled it out

of the pocket and looked at it. Clearly, Speed's search of Pritchett's pockets exceeded the bounds of a *Terry* pat-down, in any event. See *Howard*, supra; *Minnesota v. Dickerson*, supra. We can find no error in the trial court's ruling on this issue.

2. The State also contends that while the trial court's ruling denies the State's contentions, it erred in failing to address the argument of inevitable discovery. There is no merit to this argument.

We have held that "[w]hen the evidence in question would inevitably (or ultimately) have been discovered without reference to the police error or misconduct, the evidence is admissible." (Punctuation omitted.) *Gearin v. State of Ga.*[8] In this case, Speed issued tickets for speeding and driving with an improper class of license to Pritchett. Pritchett was not arrested for these offenses; Speed arrested him only after he searched his pockets and found the contraband. Discovery of the contraband was thus not inevitable, and the inevitable discovery rule does not apply to the facts of this case.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED JULY 25, 2002.

*Timothy G. Madison, District Attorney, Brian M. Rickman, Assistant District Attorney*, for appellant.
*David C. Jones, Jr.*, for appellee.

---

[8] *Gearin v. State of Ga.*, 218 Ga. App. 390, 391 (1) (461 SE2d 562) (1995).