A07A1385, A07A1386. THE STATE v. KING (two cases).
(652 SE2d 574)

MIKELL, Judge.

The state appeals from the trial court's orders granting motions to suppress evidence leading to the indictments of Richard L. King ("King") and his brother, Robert L. King, for trafficking, manufacturing, and possessing methamphetamine. The trial court's ruling was based on its finding that the state failed to prove any justification for the pat-down search of King and the initial warrantless intrusion into the residence that the Kings were visiting. The state argues that the

---

trial court erred because the police ultimately obtained a search warrant and the Kings have no standing to object to the evidence seized during that search as they were mere visitors. We find that King had standing to challenge his own pat-down search and that the methamphetamine and other items seized during the execution of the warrant were "poisonous fruit" of King's illegal pat-down search. Accordingly, we affirm the grant of both motions to suppress.

> We must abide by the following three principles when reviewing a trial court's order granting a motion to suppress evidence: First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

Properly viewed, the evidence adduced at the hearing on the motions shows that on February 13, 2006, the Kings were visiting a residence located at 880 West Stateline Road in Catoosa County. King testified that the house belonged to Paula Silmon, and he was awaiting her arrival when he heard a knock on the door. When King opened the door, he saw Catoosa County Sheriff's Deputy Freddie Roden. According to King, Roden asked the whereabouts of a woman named Amanda Brown. King replied that he did not know a person by that name and that she was not at the residence. Roden asked for King's identification, which he showed to the deputy. King had his hand on the door handle, and Roden told him to remove it. King stated, twice, that he could not let the deputy inside because the house did not belong to him. Roden forced his way inside, patted King down, and found a small metal object containing methamphetamine in his pocket. King testified that he found the box in the yard and did not know that it contained methamphetamine. King testified that he did not consent to the search of his person or of the residence.

Roden did not testify. Detective Dan Bilbrey of the Catoosa County Sheriff's Office testified that based on information supplied by Roden, Bilbrey obtained and executed a search warrant for the premises. As a result of items found in the search of the premises and

---

[1] (Citation omitted.) *State v. McKinney*, 276 Ga. App. 69 (622 SE2d 429) (2005); accord *State v. Brown*, 278 Ga. App. 457, 459-460 (629 SE2d 123) (2006).

of King's person, Richard King and Robert King were indicted for trafficking, manufacturing, and possessing methamphetamine, and Richard King was also charged with obstruction of an officer.

Once a defendant files a motion to suppress alleging an illegal search and seizure, the state bears the burden of proving that the search is lawful.[2] In the case at bar, the state makes no attempt to justify the pat-down search of King.

> A pat-down search of the outer clothing of an individual is authorized under *Terry v. Ohio*[3] in certain limited circumstances. *Terry* held that when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officers or others, he has the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm. Nothing in *Terry* can be understood to allow a generalized cursory search for weapons or, indeed, any search whatever for anything but weapons.[4]

Here, the officer who conducted the pat-down search did not testify, so the record is devoid of any evidence justifying the search. King testified that the little metal object in his pocket was "like a key chain"; no evidence was offered to show that it appeared to be a weapon or that the officer feared for his safety. In granting the motions to suppress, the trial court credited King's unrebutted testimony, determined that the search of his person violated the Fourth Amendment, and concluded that Roden had entered the premises illegally. Construed favorably to the trial court's findings, the evidence supports the trial court's conclusion that the pat-down search was unlawful.

The state argues only that the Kings, as visitors to the premises, had no standing to contest the search thereof. Generally, "warrantless intrusion of a person's home is prohibited by the Fourth Amendment, absent consent or a showing of exigent circumstances."[5] But the Fourth Amendment right against unreasonable searches and

---

[2] *State v. Gay*, 269 Ga. App. 331, 333 (604 SE2d 572) (2004).

[3] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[4] (Citations, punctuation and footnote omitted.) *State v. Pritchett*, 256 Ga. App. 698, 700 (1) (569 SE2d 616) (2002) (officer's observation of spoon in defendant's pocket did not justify pat-down search). Compare *Holmes v. State*, 267 Ga. App. 651, 652-653 (601 SE2d 134) (2004) (defendant's nervous behavior inside residence justified pat-down search to ensure defendant was not armed).

[5] (Citation omitted.) *Carranza v. State*, 266 Ga. 263, 264-265 (1) (467 SE2d 315) (1996).

seizures is a personal one and may not be asserted vicariously.[6] Thus, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."[7] This principle, though correct, is inapposite, because, as shown above, King was aggrieved not only as a result of the search of the third person's premises, but, in the first instance, as a result of the illegal search of his person. "A person does not lose the protection of the Fourth Amendment by entering the [home] of another."[8]

We next turn to the issue of whether the illegal pat-down search mandated suppression of the evidence seized as a result of the execution of the warrant. The appropriate question in this circumstance is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."[9] "[T]he indirect fruits of an illegal search or arrest should be suppressed when they bear a significantly close relationship to the underlying illegality."[10] Here, the affidavit for the search warrant has been included in the record on appeal. The affidavit reveals that when Roden found the capsule in King's pocket, Roden proceeded to arrest King and search the premises and in so doing, discovered materials used in manufacturing methamphetamine. Roden relayed this information to Bilbrey, who obtained the warrant. It thus appears that the illegal search of King's person led directly to issuance of the warrant and the seizure of the evidence to which he and his brother object. The exploitation of the illegality violated the Fourth Amendment, and, it follows that the trial court did not err in suppressing the evidence obtained thereby.

*Judgments affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 28, 2007.

*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellant.
*Robert L. Stultz*, for appellee (case no. A07A1385).

---

[6] *Rakas v. Illinois*, 439 U. S. 128, 133-134 (II) (A) (99 SC 421, 58 LE2d 387) (1978).

[7] (Citation omitted.) Id. Accord *Atwater v. State*, 233 Ga. App. 339, 340 (2) (503 SE2d 919) (1998); *Todd v. State*, 184 Ga. App. 750, 752 (2) (362 SE2d 400) (1987).

[8] (Citation and punctuation omitted.) *Gay*, supra.

[9] (Punctuation omitted.) *State v. Cooper*, 260 Ga. App. 333, 336 (2) (579 SE2d 754) (2003), quoting *Wong Sun v. United States*, 371 U. S. 471, 488 (III) (83 SC 407, 9 LE2d 441) (1963) (evidence obtained as result of illegal search inadmissible as fruit of the poisonous tree).

[10] (Citations and punctuation omitted.) *State v. Brown*, 198 Ga. App. 239, 240 (401 SE2d 295) (1990).

*Brian M. House*, for appellee (case no. A07A1386).