## A10A0857. THE STATE v. JONES.
### (693 SE2d 583)

BLACKBURN, Presiding Judge.

Following an evidentiary hearing, the trial court entered a detailed order granting Willie Jones's motion to suppress, which order the State appeals. Based on the testimony given at the hearing, the court found that the police escalated a first-tier encounter to a second-tier encounter without a reasonable, articulable suspicion of criminal activity, and that the police had no reason to believe Jones had or intended to use a weapon. Because some evidence supported the trial court's findings, we affirm.

> When reviewing a trial court's ruling on a motion to suppress, we apply the "any evidence" standard, which means that we sustain all of the trial court's findings of fact that are supported by any evidence. We construe all evidence presented in favor of the trial court's findings and judgment.

(Punctuation omitted.) *Davis v. State*.[1] In this case, it is also important to emphasize that "we have repeatedly held that a trial

---

[28] *Dailey v. State*, 287 Ga. App. 706, 710 (1) (e) (652 SE2d 599) (2007).

[1] *Davis v. State*, 302 Ga. App. 144, 144-145 (690 SE2d 464) (2010).

court has every right to disbelieve police testimony, even if it is uncontradicted." *State v. Starks*.[2] See *State v. Alexander*[3] ("[t]he trial court was ... authorized to disbelieve the officers ... , even though their testimony was uncontradicted by defendant"). See generally *Tate v. State*.[4]

Construed in favor of the trial court's findings, the evidence showed that on March 14, 2007, two policemen on bicycle patrol each approached the driver's and passenger's sides of a vehicle respectively, where a female was leaning into the driver's side window and a male (later identified as Jones) was sitting in the passenger seat. Neither officer observed the violation of any laws. After speaking briefly with the female and determining that she was fine, the officer on the driver's side observed Jones remove a "Crown Royal" bag from the cupholder and hold it in his hand, while a pizza box lay in his lap. Jones began to exit the vehicle but was prevented from doing so by the presence of the second officer on the passenger's side. He replaced the bag in the cupholder. The first officer asked what was in the bag, but Jones did not reply. The officer repeated his question several times, but Jones again declined to answer, at one point attempting to place the pizza box over the bag. The officer leaned into the vehicle and opened the bag so he could see its contents, which appeared to be cocaine. The officer seized the bag and determined that it contained cocaine, the drug "ecstasy," and marijuana.

Jones was charged with possession of cocaine with intent to distribute,[5] possession of methylenedioxymethamphetamine (ecstasy),[6] and possession of marijuana.[7] He moved to suppress the contents of the bag, arguing that the first officer violated his Fourth Amendment rights by searching the bag without his consent. The trial court granted the motion, finding that (i) the police detained Jones without reasonable suspicion when the second officer prevented his exiting the vehicle, (ii) at no point prior to the search of the bag did the police have any reasonable, articulable suspicion of criminal activity, and (iii) the first officer did not believe that the bag contained a weapon (and even if he did, there was no law against possessing a weapon and Jones made no indication of using any supposed weapon against the officers). Because some evidence supported the trial court's findings, we affirm.

---

[2] *State v. Starks*, 281 Ga. App. 15, 17 (635 SE2d 327) (2006).

[3] *State v. Alexander*, 245 Ga. App. 666, 667-668 (538 SE2d 550) (2000).

[4] *Tate v. State*, 264 Ga. 53, 56-57 (3) (440 SE2d 646) (1994).

[5] OCGA § 16-13-30 (b).

[6] OCGA § 16-13-30 (a).

[7] OCGA § 16-13-30 (j) (1).

Fourth Amendment law is clear.

There are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief "seizures" that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, *as long as the officers do not detain the citizen or create the impression that the citizen may not leave.* The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.

(Citations and punctuation omitted; emphasis supplied.) *McClain v. State.*[8]

"It is well established that an officer's approach of a stopped vehicle and inquiry as to what is going on does not constitute a 'stop' or 'seizure' and clearly falls within the realm of the first type of police-citizen encounter." (Punctuation omitted.) *State v. Folk.*[9] Thus, the officers' initial approach to the vehicle and discussion with the female and questioning of Jones fell within the realm of a first-tier encounter, requiring no reasonable suspicion of criminal activity.

During this first-tier encounter, Jones was free to "refuse to answer or ignore the request[s of the officer] and go on his way if he [chose], for this [did] not amount to any type of restraint and is not encompassed by the Fourth Amendment." (Punctuation omitted.) *Black v. State.*[10] Indeed, at this point, "a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter. Even running from police during a first-tier encounter is wholly permissible." (Citation and punctuation omitted.) Id. at 44 (1).

However, as expressly found by the trial court, once the second officer prevented Jones from exercising this right and exiting the vehicle, the encounter escalated to a second-tier encounter. See

---

[8] *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997).

[9] *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999).

[10] *Black v. State*, 281 Ga. App. 40, 43 (1) (635 SE2d 568) (2006).

*Thomas v. State*.[11] Yet Jones had done nothing to give rise to "a particularized and objective basis for suspecting [he was] involved in criminal activity." *McClain*, supra, 226 Ga. App. at 716 (1). All he had done was obtain the bag from the cupholder and attempt to exit the vehicle, which he was certainly entitled to do in a first-tier encounter. His decision to exercise that right can hardly give rise to a reasonable suspicion of criminal activity; otherwise, a citizen could *never* exercise his right to avoid an officer without that officer then claiming that the exercise of that right gave the officer a reasonable suspicion of criminal activity. Such logic would automatically escalate every first-tier encounter (where a citizen exercised his right to walk away or to ignore the officer) to a second-tier encounter. See *Black*, supra, 281 Ga. App. at 46 (1) ("[s]uch conduct may not provide the basis for elevating the encounter to a second-tier *Terry* stop").

Even if it could be successfully maintained that the detention had not yet begun when Jones unsuccessfully attempted to exit the vehicle (despite the trial court's finding to the contrary), Jones's subsequent refusal to answer the officer's questions as to what was in the bag, and his placing the bag back in the cupholder (and even placing the pizza box on top of it) also gave the officer no basis for an investigatory detention. As stated earlier, during the first-tier encounter, Jones was free to "refuse to answer or ignore the request[s of the officer] and go on his way if he [chose]." (Punctuation omitted.) *Black*, supra, 281 Ga. App. at 43 (1). Cf. *Johnson v. State*[12] (a "detention must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the detention, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing") (punctuation omitted). The cases cited by the State are distinguishable, in that they involved undisputedly-justified second-tier encounters (see *State v. Whitt*,[13] *Jones v. State*,[14] and *Bell v. State*[15]) or involved testimony — believed by the trial court — of substantially more suspicious facts giving rise to a legally-justified basis to a second-tier encounter (see *Kennedy v. State*[16]).

Thus, the State's attempt to justify the search of the bag as a search for a weapon so as to protect the officers' safety fails. A

---

[11] *Thomas v. State*, 301 Ga. App. 198, 201 (1) (687 SE2d 203) (2009).
[12] *Johnson v. State*, 299 Ga. App. 474, 476 (682 SE2d 601) (2009).
[13] *State v. Whitt*, 277 Ga. App. 49 (625 SE2d 418) (2005).
[14] *Jones v. State*, 259 Ga. App. 849 (578 SE2d 562) (2003).
[15] *Bell v. State*, 248 Ga. App. 254 (546 SE2d 34) (2001).
[16] *Kennedy v. State*, 298 Ga. App. 372 (680 SE2d 478) (2009).

limited search for a weapon for an officer's safety only arises during a legally-justified second-tier encounter (see *Silva v. State*[17]), which was not present here. Moreover, even if this were a legally justified second-tier encounter, the trial court did not find credible the officer's testimony that he thought the bag contained a weapon or that Jones might intend to use the supposed weapon, a finding clearly justified by Jones's placing the bag back in the cupholder and indeed trying to stuff it deeper into that cupholder. See *Bianco v. State*[18] ("the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger") (punctuation omitted). Thus, a search of the bag was not justified. See *State v. King*[19] (during a second-tier stop, an officer "has the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm" only where the "officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officers or others") (punctuation omitted).

Because some evidence supported the trial court's key findings here, we affirm its decision to grant the motion to suppress.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED APRIL 1, 2010.

*Stephen D. Kelley, District Attorney, Todd E. Naugle, Assistant District Attorney*, for appellant.
*Karen L. Mead, Michael C. Taylor*, for appellee.

[17] *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004).
[18] *Bianco v. State*, 257 Ga. App. 289, 290-291 (570 SE2d 605) (2002).
[19] *State v. King*, 287 Ga. App. 680, 682 (652 SE2d 574) (2007).