**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 18, 2019**

# In the Court of Appeals of Georgia

A19A1576. THE STATE v. ALBRITTEN.                              PH-053C

PHIPPS, Senior Appellate Judge.

Kanazawa Albritten was indicted with trafficking in methamphetamine, possession of Methadone, a controlled substance, possession of drug-related objects, and possession of marijuana, less than an ounce. Albritten filed a motion to suppress evidence found in a camper located in the backyard of his house. The trial court granted the motion to suppress, and the State appeals. For the following reasons, we vacate the trial court's order and remand for further findings.

When this Court reviews a trial court's motion to suppress order, we are

guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are

analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted; emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

So viewed, the evidence at the motion to suppress shows that on January 18, 2018, several investigators from the Drug Task Force of the Worth County Sheriff's Office went to 3148 Georgia Highway 112 in Worth County for the purpose of conducting a "knock and talk" because someone had called the police to report drug activity at the location, as well as to perform a search pursuant to a Fourth Amendment waiver signed by Brooks Knight, a probationer. Knight was not present on the property, and Knight's address was not the same as Albritten's address.[1]

---

[1] Officers appear to have gone to the wrong address to find Knight. Knight's address on file with the probation office was listed as Old Dawson Road in Albany. Knight's probation paperwork listed 3148 Georgia Highway 112 South listed as Knight's father's address under "collateral contact."

When the task force arrived at 3148 Georgia Highway, several people began running away from the house. The task force attempted to tell those fleeing to stop, but the majority scattered in different directions. The task force then secured the area and made sure that nobody was in the woods. The task force officers managed to gather several of the individuals who attempted to flee the scene in the backyard of the house. Although the task force did not have a search warrant to enter the home, two officers entered the home and conducted a protective sweep because officers believed that there might still be people inside the home. Major Haralson testified that he did so to ensure the safety of his officers. Major Haralson testified that during the protective sweep he observed numerous drug-related paraphernalia in plain view inside the home.

An officer then left the scene to obtain a search warrant. The individuals in the backyard were handcuffed, patted down for weapons, and were not free to leave the property while they waited for an officer to return with the search warrant. The basis for this search warrant was the fact that officers had seen methamphetamine inside the house. The search warrant was for the entire premises, including the curtilage of the home located at 3148 Georgia Highway 112 South. Once the search warrant was obtained, officers entered the home and found drug contraband in the kitchen, the

3

laundry room, attic, and two bedrooms. One of those bedrooms belonged to Albritten. A camper, parked about 50 to 100 feet from the back porch, was also searched by officers. The camper was described as uninhabitable and "just a shell." Inside the camper, officers found a small hot water heater, a refrigerator, and about 2.75 ounces of methamphetamine. When asked if Albritten claimed any ownership in the camper, an officer responded "[n]ot to my knowledge."

As a result of their search, Albritten was arrested and charged with various violations of the Georgia Controlled Substances Act. During an interview with police after his arrest, Albritten told an investigator that he had been living in a bedroom on the property for two to three months.

Albritten filed a motion to suppress, which the trial court granted on the grounds that Albritten should have been free to terminate his first-tier encounter with law enforcement, that the plain view doctrine is not applicable in cases where the Fourth Amendment was violated prior to observing the evidence in question, and that any contraband discovered after the search warrant was executed was fruits of the poisonous tree.

The State concedes in its appellate brief that the evidence seized from inside the home pursuant to the search warrant must be suppressed because the search

4

warrant was based on an impermissible protective sweep leading to the observance of items in plain view. The State also concedes that Albritten had an ownership interest in the home because he had lived there for several months and one bedroom was determined to be his, and that the camper likely was in the curitilage of the property. In its sole enumeration, the State argues that the trial court erred in granting Albritten's motion to suppress evidence found within the camper outside the home because Albritten lacked standing to challenge the seizure. The State argues that Albritten had no Fourth Amendment expectation of privacy in the camper located 50 to 100 feet from the back door of the house because he did not claim an ownership interest in it.

Generally, "warrantless intrusion of a person's home is prohibited by the Fourth Amendment, absent consent or a showing of exigent circumstances. But the Fourth Amendment right against unreasonable searches is a personal one and may not be asserted vicariously." (Footnotes omitted.) *State v. King*, 287 Ga. App. 680, 682-683 (652 SE2d 574) (2007). Thus, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (Citations omitted.) *Green v. State*, 331 Ga. App. 801, 807 (1) (771

5

SE2d 518) (2015). The person claiming a violation of his Fourth Amendment rights bears the burden of demonstrating that he has "standing to contest such violation, i. e., that he has a legitimate expectation of privacy in the premises searched." (Citation omitted.) *Atwater v. State*, 233 Ga. App. 339, 340 (2) (503 SE2d 919) (1998).

The State argues that Albritten lacks standing to contest the illegal search of the trailer because he did not claim an ownership interest in the trailer located 50 to 100 feet behind the house. The State relies upon *State v. Graddy*, 262 Ga. App. 98 (585 SE2d 147) (2003) for this assertion. In *Graddy*, law enforcement executed a search warrant where they searched a home, a shed and a workshop. Items for manufacturing methamphetamine were found in the shed located 25 to 30 feet from the home. Id. at 101-102 (1). This Court held that the defendant lacked standing to assert a Fourth Amendment objection to the contraband discovered in the shed because Graddy "disclaim[ed] ownership or an interest in the two buildings." Id. at 104 (4) (b).

In the instant case, unlike in *Graddy*, supra, there is no direct testimony that Albritten affirmatively disclaimed ownership over the trailer. Rather, different officers testified that Albritten "never claimed ownership of it," that they did not know whether Albritten owned the camper at any point, and that officers were

6

unaware whether anybody on the property claimed ownership of the camper. There was no testimony in the motion to suppress hearing that Albritten was directly asked and answered whether he had an ownership interest in the camper. Further, the trial court's written order granting Albritten's motion to suppress does not make a finding of fact as to whether Albritten had an ownership interest in the camper and fails to rule on the State's argument that he lacked standing. When reviewing the grant or denial of a motion to suppress, this Court generally must limit its consideration of disputed facts to those expressly found by the trial court. See *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). "We usually assume that trial judges have done their job, and especially where . . . the trial court made extensive findings of fact, we generally must presume that the absence of a finding of a fact would tend to undermine the conclusion of the trial court reflects a considered choice to reject the evidence offered to prove that fact[.]" Id. at 747 (1). But where, as here, the "trial court has made express finding of facts but not with sufficient detail to permit meaningful review," our Supreme Court has instructed that this Court may remand for further findings. Id. at 746 (1), n. 6.

Accordingly, because the trial court's order lacks sufficient detail for us to provide appellate review as to whether Albritten has standing to contest the search

of the camper, we vacate the trial court's grant of the motion to suppress and remand for the trial court to make additional findings on the limited scope of standing. See *Martinez v. State*, 347 Ga. App. 675, 684-685 (c) (ii) (820 SE2d 507) (2018) (remanding a trial court's motion to suppress ruling for factual findings as to whether a forensic search subsequent to a consensual search of defendant's phone exceeded the scope of consent); *Williams v. State*, 301 Ga. 60, 62 (799 SE2d 779) (2017) ("[g]iven the uncertainty in the trial court's order regarding the basis for its ruling, this Court must vacate the opinion . . . [and] remand this case to the trial court for further clarification on the specific findings that form the basis for its legal conclusions").

*Judgment vacated and case remanded. McFadden, C. J., and McMillian, P. J. concur*.