**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
https://www.gaappeals.us/rules

**March 11, 2024**

# In the Court of Appeals of Georgia

A23A1677. FARMER v. THE STATE.

DILLARD, Presiding Judge.

Andrew Joe Farmer appeals from the trial court's denial of his motion to suppress evidence, contending it erred in doing so when (1) his avoidance of law-enforcement officers did not support a reasonable, articulable suspicion that he was engaged in criminal activity; (2) his mere presence in an area near a suspected crime did not support a lawful detention and arrest; and (3) evidence did not support the court's finding that officers observed him in possession of a bag prior to his detention. For the following reasons, we reverse.

Viewed in the light most favorable to the trial court's findings and judgment,[1] the record shows that on May 23, 2022, at approximately 4:15 a.m., Waynesboro law enforcement received a computer notification about a triggered alarm at a Dollar General store and immediately suspected that it was a burglary "because of prior incidences of burglaries at that particular location." As a result, an officer put out a be-on-the-lookout (BOLO) for "anybody suspicious walking around with anything" or "anybody suspicious walking or running or anything like that" in the vicinity of the Dollar General. In short order, deputies with the Burke County Sheriff's Department heard a dispatch regarding the alarm sounding at the Dollar General, and—because of recent burglaries at other Dollar General stores—responded to assist the city officers.

A responding deputy first circled the relevant area and observed a man—later identified as Farmer—emerge from the bushes and trees in a direction headed *away* from the Dollar General. Farmer looked directly at the deputy, made "a loud noise,"

---

[1] *See, e.g.*, *Quint v. State*, 367 Ga. App. 339, 341 (886 SE2d 1) (2023) ("In reviewing the trial court's ruling on a motion to suppress, we generally must (1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court." (punctuation omitted)).

and then proceeded to run between nearby houses. The deputy immediately radioed out a description of Farmer; and another deputy spotted him, gave chase, and tackled him as he attempted to scale a six-foot-tall iron fence. Farmer was then taken into custody, and the deputies searched a red lunch bag he had been carrying, which was found to contain 35 unopened packages of Newport cigarettes and a hammer.[2]

Farmer was subsequently indicted on charges of burglary in the second degree and possession of tools for the commission of a crime. He later moved to suppress the State's evidence on the basis that he was subjected to an unlawful search and seizure.[3] Following a hearing on the matter, the trial court denied Farmer's motion. We granted Farmer's application for an interlocutory appeal of the trial court's order, and

---

[2] The arresting officers did not know it while pursuing Farmer, but the glass door to the Dollar General had been broken to gain entry and many Newport cigarettes were missing from the store's cigarette counter.

[3] *See* U.S. CONST. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); GA. CONST. Art. 1, Sec. 1, Par. XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the person or things to be seized.").

this appeal follows. We will consider each of Farmer's related enumerations of errors together, keeping in mind that when a criminal defendant moves to suppress evidence on the basis it was obtained unlawfully, "the burden of proving that the search and seizure were lawful shall be on the state."[4]

Specifically, Farmer contends his avoidance of law-enforcement officers did not support a reasonable, articulable suspicion that he was engaged in criminal activity. He argues separately that his mere presence in an area near a suspected crime did not support a lawful detention and arrest. We conclude that although officers had a reasonable, articulable suspicion to detain Farmer for further investigation, they did not have reasonable, articulable suspicion to search the bag in his possession.

As we have previously explained, there are at least three types of police-citizen encounters: verbal communications involving no coercion or detention; brief stops or seizures that must be accompanied by a reasonable suspicion; and arrests, which can be supported only by probable cause.[5] During a so-called first-tier encounter, law

---

[4] OCGA § 17-5-30 (b); *accord McCoy v. State*, 341 Ga. App. 216, 216 (799 SE2d 354) (2017).

[5] *See State v. Copeland*, 310 Ga. 345, 351 (2) (b) (850 SE2d 736) (2020) (punctuation omitted); *see also Christy v. State*, 315 Ga. App. 647, 652 (2) (727 SE2d 269) (2012) ("Georgia recognizes three tiers of police-citizen encounters: consensual

enforcement may not use force because an "officer in such an encounter has no authority to detain or restrict the liberty of a citizen, and the citizen has the right to withdraw from the encounter or resist any such use of force with a proportionate use of force."[6] So, we have repeatedly held citizens are free to walk or even run away from a first-tier encounter with law enforcement.[7]

Here, the deputy who initially spotted Farmer never engaged in a first-tier encounter because before the deputy could even attempt verbal communication or

encounters; brief investigatory stops that require reasonable suspicion; and arrests that require probable cause." (punctuation omitted)); *Jupiter v. State*, 308 Ga. App. 386, 389 (1) n.15 (707 SE2d 592) (2011) (same).

[6] *Copeland*, 310 Ga. at 351 (2) (b) (punctuation omitted); *accord State v. Allen*, 330 Ga. App. 752, 755 (769 SE2d 165) (2015); *see Miller v. State*, 351 Ga. App. 757, 761 (1) (833 SE2d 142) (2019) ("In first-tier encounters, police may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave." (punctuation omitted)).

[7] *See, e.g.*, *Miller*, 351 Ga. App. at 761 (1) (explaining that "it is well settled that a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter" and that "even running from police during a first-tier encounter is wholly permissible" (punctuation omitted)). *See generally Glenn v. State*, 310 Ga. 11, 21 (1) (b) (849 SE2d 409) (2020) (providing history and discussion of the common-law right to resist and unlawful arrest and explaining that "under the common law, a person cannot be punished for fleeing from or physically resisting an unlawful arrest or escaping from an unlawful detention, so long as the person uses no more force than is necessary to achieve such purpose").

5

contact, Farmer fled between houses after seeing the deputy. To be sure, law enforcement lacked reasonable, articulable suspicion to justify a second-tier encounter—*i.e.*, a brief stop or seizure based upon a reasonable suspicion—solely on the basis that Farmer was walking in the vicinity of a crime at 4:15 a.m., particularly when the dispatched BOLO was only to look for "anybody suspicious" in the area without any identifiable characteristics of a suspect.[8] But when Farmer fled without provocation *prior* to the deputy making *any* form of contact, this—combined with the other factors—was sufficient to provide officers with reasonable, articulable suspicion

---

[8] *See Ewumi v. State*, 315 Ga. App. 656, 661 (1) (727 SE2d 257) (2012) (explaining that "none of [the defendant's] described activities—walking away from the officer, ignoring the officer, being present in a high-crime area (and returning home from a school function), walking in a slumped position, and wearing a hooded sweatshirt in early March—are a crime in and of themselves, nor are they enough to make an objective determination that [the defendant] was about to be engaged in criminal activity" (punctuation omitted)); *see also United States v. Street*, 917 F3d 586, 594 (II) (A) (7th Cir. 2019) ("Without more, a description that applies to large numbers of people will not justify the seizure of a particular individual."). The evidence here shows that no one personally observed the store being burglarized and so law enforcement did not have a description of the suspect's clothes, shoes, height, weight, gender, race, age, or what he or she might be carrying. The only thing observed by the initial deputy was Farmer emerging from a wooded area and running away after seeing the deputy. But the deputy did not see Farmer with any weapons or other dangerous items. Indeed, only after Farmer was in custody did law enforcement have an opportunity to view the store's surveillance video.

6

to warrant further investigation.[9] And based on this reasoning, the trial court concluded that a second-tier detention properly occurred, leading to Farmer's arrest *after* deputies searched the red bag. But contrary to the trial court's conclusion, the search of Farmer's bag was *not* supported by reasonable, articulable suspicion.

While Farmer was properly detained for purposes of a second-tier investigation,[10] officers immediately engaged in a search of the bag in his possession

---

[9] *See Illinois v. Wardlow*, 528 U.S. 119, 124-25 (120 SCt 673, 145 LE2d 570) (2000) (holding that presence in an area of heavy narcotics trafficking *in addition to* defendant's unprovoked flight upon noticing law enforcement was sufficient to permit officers to stop defendant to further investigate); *Grant v. State*, 122 Ga. 740 (50 SE 946) (1905) (noting that flight can raise an inference of consciousness of guilt); *Copeland v. State*, 281 Ga. App. 11, 14 (2) (635 SE2d 283) (2006) ("[U]nprovoked flight, given other suspicious circumstances, . . . gives rise to a reasonable articulable suspicion of criminal activity."); *see also Green v. State*, 127 Ga. App. 713, 715 (194 SE2d 678) (1972) (holding that "the accused's fleeing from the police, carrying a small package in his hands, which he discarded before attempting to get into a twice-illegally-parked automobile at about 3 a.m. at a location at which there had been numerous burglaries and reports of drug traffic" justified a second-tier encounter for questioning, which the police did before arresting defendant).

[10] *See, e.g.*, *In the Interest of G. M. W.*, 355 Ga. App. 151, 154 (1) (a) (842 SE2d 920) (2020) (holding that officers engaged in a second-tier encounter when they informed juvenile that he "was being detained until the officers completed their investigation" and the detention lasted only four to five minutes while they did so); *Spence v. State*, 295 Ga. App. 583, 585 (672 SE2d 538) (2009) (noting that during a second-tier encounter, law enforcement may "momentarily detain" a person "in order to determine his identity or to maintain the status quo while obtaining more information").

without reasonable, articulable suspicion to do so. Indeed, the testimony by the deputy who initially spotted Farmer was as follows:

> I was pulling down the street when I saw Sergeant Hodge running towards the fence with the defendant in front of him and the defendant was trying to hop the big [ ]six-foot-tall iron fence[,] trying to get over it. Whenever Sergeant Hodge got him off the fence, he – we had – he had had a bag. *Sergeant Hodge took him into custody. We checked the bag*, and it had a bunch of Newport pack cigarettes in it, which was what was missing from the store.[11]

Sergeant Hodge did not testify at the hearing, and there is no evidence Farmer was questioned, searched, or subjected to further investigation *prior* to the search of his bag.[12]

The hearing testimony supports Farmer's argument that the trial court erroneously concluded officers saw the bag prior to his apprehension, and the record lacks *any* testimony to explain how or why the bag came to be searched during a

---

[11] (Emphasis supplied).

[12] We do not agree with the State's alternative argument that officers had probable cause for an arrest, and thus could search the bag incident to that arrest.

second-tier encounter (*e.g.*, for officer safety, by consent).[13] Indeed, no officer testified to observing a bag or potential weapon in Farmer's possession when he was first spotted or while he was being pursued. Instead, the bag is only mentioned in testimony regarding what occurred *after* Farmer was taken into custody, at which point it was searched without any mention of consent or a concern for officer safety.[14] The officers

---

[13] *See Florida. v. Royer*, 460 U.S. 491, 502 (III) (103 SCt 1319, 75 LE2d 229) (1983) (holding that if defendant had "voluntarily consented to the search of his luggage while he was justifiably being detained on reasonable suspicion, the products of the search would be admissible against him"); *Bianco v. State*, 257 Ga. App. 289, 290-91 (570 SE2d 605) (2002) ("A reasonable search for weapons for the protection of the police officer is permitted where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (punctuation omitted)).

[14] We are unpersuaded by the State's suggestion that we may infer from the trial court's order that Farmer dropped or abandoned the bag before attempting to scale the fence. *Cf. Barber v. State*, 317 Ga. App. 600, 601 (1) (a) (732 SE2d 125) (2012) ("[C]ontraband discarded before a suspect is seized or during flight is admissible as evidence, even if an issue exists as to whether the officers possessed reasonable suspicion of criminal activity."). The trial court did not make such a finding, and the testimony below does not support such a finding.

needed—and lacked—a justification to search Farmer's bag, and so the trial court erred in denying his motion to suppress.[15]

For all these reasons, we reverse the trial court's denial of Farmer's motion to suppress.

*Judgment reversed. Rickman and Pipkin, JJ., concur.*

---

[15] *See State v. Jones*, 303 Ga. App. 337, 341 (693 SE2d 583) (2010) (concluding that search of defendant's bag was not justified when, "even if this were a legally justified second-tier encounter, the trial court did not find credible the officer's testimony that he thought the bag contained a weapon or that [the defendant] might intend to use the supposed weapon, a finding clearly justified by [the defendant's] placing the bag back in the cupholder and indeed trying to stuff it deeper into that cupholder"); *State v. King*, 287 Ga. App. 680, 682 (652 SE2d 574) (2007) (holding that "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officers or others, he has the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm" but that nothing permits "a generalized cursory search for weapons or, indeed, any search whatever for anything but weapons").